STATE of Minnesota, Respondent,

v.

Dorwin KYLES, Appellant.

STATE of Minnesota, Respondent,

v.

Dorwin KYLES, Appellant.

STATE of Minnesota, Respondent,

v.

William Ellis KYLES, Appellant.

STATE of Minnesota, Respondent,

v.

William Ellis KYLES, Appellant.

Nos. 46419, 46420, 46429 and 46430.

Supreme Court of Minnesota.

Aug. 19, 1977.

C. Paul Jones, Public Defender, Rosalie E. Wahl, Asst. Public Defender, Minneapolis, for appellants.

Warren Spannaus, Atty. Gen., Richard G. Mark, Asst. Atty. Gen., Frederick S. Suhler, Jr., Special Asst. Atty. Gen., St. Paul, Elton A. Kuderer, County Atty., David R. Teigum, County Atty., Madelia, for respondent.

Heard before ROGOSHESKE, Mac-LAUGHLIN and PLUNKETT, JJ., and considered and decided by the court en banc.

ROGOSHESKE, Justice.

This case arises out of the burglary of a bar and liquor store in Ormsby, Minnesota, and the burglary of an agricultural service company in Echols, Minnesota, on January 22, 1975. Defendants, who are brothers, were found guilty by juries in joint trials in Martin and Watonwan County District Courts, respectively. An accomplice, Calvin Clevenger, pleaded guilty to the burglary in

Echols. Defendants, who each received two 5-year prison terms to run concurrently, appeal from the judgments of conviction. Issues raised by defendants on these consolidated appeals are (1) whether their arrests were illegal, thereby tainting and rendering inadmissible evidence seized subsequent to the arrests which connected them to the burglaries; (2) whether photographic identification procedures used by police created a substantial likelihood of misidentification of defendants; (3) whether there was as a matter of law insufficient evidence to convict; and (4) whether the trial court erred in refusing to grant defendants a new trial on the Echols burglary charge on the ground of juror misconduct. We affirm.

1. Defendants and Clevenger were arrested by Missouri law enforcement officers early on January 24, 1975, 2 days after the burglaries in Echols and in Ormsby. The events which culminated in these arrests began at about 3 a. m. when a burglar alarm sounded at a bank in the small town of Wyaconda, Missouri, which is in the northeastern part of the state. Because of a heavy frost covering on the roads, the officers were able to follow the snowtire tracks of the car apparently used by the burglars to the intersection of a Missouri county road and U. S. Highway No. 136. There they learned from a local resident that a red Chrysler or Ford had turned west onto the highway at a high rate of speed. A systematic search of the area northwest of that intersection resulted in the discovery just before 5 a. m. of a 1966 rust-colored Chrysler with snowtires parked in a field. The defendants and Clevenger, the owner of the vehicle, were asleep in the car, and the car's engine was still warm.

■ On these facts, we hold that the officers had probable cause to believe that the men in the car were the ones who had attempted to burglarize the bank. Thus, it follows that we must reject defendants' contention that the subsequent arrests were illegal and that all the evidence seized (including the clothing worn by defendants and tools seized from the trunk) was tainted evidence.

■ This brings us to the alternate contention of defendants that, even if the arrests were legal, there was no basis for the search of the trunk of the car because that search was not within the permissible scope of a search incident to arrest and was not justified on independent grounds. We do not decide whether under *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), the search of the trunk could be justified as being within the permissible scope of a search incident to arrest. Decision of that issue is unnecessary in this case because the same facts which gave the officers probable cause to arrest defendants and Clevenger gave them probable cause to believe that the car had been used as an instrumentality of the crime, and that the trunk contained evidence which would implicate them further in the attempted burglary. Under *State v. Thiel*, 299 Minn. 179, 217 N.W.2d 499 (1974), and cases cited therein, the officers therefore had independent justification for the search of the trunk.[1]

2. At both trials, Rodney Moe, one of the proprietors of the bar and liquor store that was burglarized in Ormsby, testified that defendants had been at the bar on the evening of January 21, 1975. This testimony was crucial because it established that defendants had been in Ormsby on the night prior to the early morning burglary of the bar and liquor store, and that they had been in the vicinity of Echols on the day before the Echols burglary. On appeal, defendants contend that this evidence should have been excluded as being the product of an impermissibly suggestive photographic display which Moe saw in late January 1975, prior to trial.

■ The test which must be applied in cases such as this when identification procedures are challenged on due process grounds is whether the procedures created a substantial likelihood of misidentification. *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). In this case, we are

1. It is also unnecessary to decide the consent issue raised by the state in its brief.

satisfied that the photographic display did not create a substantial likelihood of misidentification.

3. The third issue, relating to the sufficiency of the evidence, does not merit detailed discussion. Suffice it to say that, while the evidence connecting defendants to the burglary in Echols was perhaps less compelling than the evidence connecting them to the burglary in Ormsby, the evidence in both cases was sufficient to support the verdicts.

4. The final issue is whether there was prejudicial juror misconduct in the trial of defendants for the burglary in Echols. One of the jurors was a member of the board of directors of the insurance company which paid a claim of the service company in Echols for items taken in the burglary. When the juror learned of this payment during the trial, he should have informed the court of it beyond the hearing of the jury. This would have enabled the court to pass upon the juror's qualification to continue to sit, and the court easily could have allowed the alternate juror to take the place of this juror. However, this was not done, and defendants and the court did not learn of this matter until later. Defendants then bore the burden of demonstrating actual misconduct and prejudice at the so-called *Schwartz* hearing. See, *Schwartz v. Minneapolis Suburban Bus Co.*, 258 Minn. 325, 104 N.W.2d 301 (1960). On the basis of the evidence adduced at that hearing, we hold that the trial court did not abuse its discretion in denying relief on this ground.

Affirmed.