STATE of Minnesota, Respondent,

v.

George YANT, Appellant.

No. C5–84–2206.

Court of Appeals of Minnesota.

Nov. 12, 1985.

Review Denied Jan. 17, 1986.

Hubert H. Humphrey, III, State Atty. Gen., Robert A. Stanich, Asst. Atty. Gen., St. Paul, Thomas J. Keyes, Beltrami County Atty., Bemidji, for respondent.

Kenneth Meshbesher, Andrew S. Birrell, John P. Sheehy, Minneapolis, for appellant.

Heard, considered and decided by FOLEY, P.J., and FORSBERG and NIERENGARTEN, JJ.

## OPINION

FOLEY, Judge.

George Yant appeals from the trial court's denial of his motion for a mistrial or new trial because of jury misconduct, failure to instruct on fifth-degree assault and alleged incompetence of counsel. Appellant does not challenge the sufficiency of the evidence to sustain conviction. Appellant was convicted and sentenced on two counts of second-degree assault. There were two victims of the assault which occurred simultaneously as part of the same incident. Appellant also seeks review of his sentence. We affirm the convictions and remand for resentencing.

## FACTS

On October 11, 1984, George Yant was found guilty of two counts of second-degree assault for his actions in removing two trespassing deer hunters from his farm property. On November 2, 1984, appellant, through his counsel, moved for a mistrial or for a new trial because jurors reportedly fell asleep during his trial and he was deprived of a fair trial. In addition, appellant moved *pro se* for a new trial on other grounds, including ineffective assistance of counsel.

The trial court denied these motions and appellant was sentenced according to the mandatory minimum to serve concurrent

sentences of three and five years, respectively. Yant appeals from his convictions and sentence.

## ISSUES

1. Did appellant waive his right to object to sleeping jurors?

2. Was appellant denied effective assistance of counsel?

3. Did the trial court err by not submitting fifth-degree assault as a lesser-included offense of second-degree assault?

4. Did the trial court properly impose a five-year sentence on Count II?

## ANALYSIS

### 1. *Sleeping Jurors*

This court considered the impact of a sleeping juror on a defendant's right to a fair trial in *State v. Henderson*, 355 N.W.2d 484 (Minn.Ct.App.1984). *Henderson* states the rule with regard to sleeping jurors:

> While our courts have not specifically addressed the sleeping juror problem, in other jury misconduct cases *a defendant must show actual misconduct and that the misconduct resulted in prejudice. See, e.g., State v. Peterson*, 262 N.W.2d 706, 707 (Minn.1978); *State v. Kyles*, 257 N.W.2d 378, 381 (Minn.1977).

*Id.* at 486 (emphasis added).

Here, as in *Henderson*, appellant fails to demonstrate that he was prejudiced. Appellant and his counsel were apprised of the fact of sleeping jurors early in trial. The following discussion occurred in chambers, in appellant's presence:

> THE COURT: The sleeper I've been concerned with—I don't know his name, it's the guy next to [S.], [S.] had his eyes closed a little yesterday and he's had them closed a little bit today, I would not be able to truthfully say that he's been sleeping because some people close their eyes. I told Dottie [bailiff] to tell him to quit that because he didn't nod, but the other guy was out cold as you could see.

It is my own personal opinion that we've arrested the problem soon enough to prevent any serious prejudice to either side, but that's only my personal opinion. What is your position, Mr. [Keyes]?

MR. KEYES [prosecutor]: Your Honor, for the record, it's Tom Keyes, I have not observed that juror quite as closely as you have, I don't think, he has appeared to have his eyes closed for a substantial length of time. I guess my observation of Mr. [S.] would be similar to yours, that his—his eyes were closed even during the opening statement that I made, I don't think he was—

THE COURT: I noticed the same thing, I told Dottie, though, to tell him. I also didn't tell you, I told her to tell Mrs. [A.] and get the other guy and do this.

MR. KIEF [defense counsel]: Who are we talking about, [R.L.]?

> \*    \*    \*    \*    \*    \*

THE COURT: All right, you recognize him, they scuffled around, he was the guy that was definitely out cold, you know, when the mouth opens and it goes down and the eyes are shut, if you don't hear them, you can still tell.

MR. KIEF: You people got better views of the entire jury than I have.

THE COURT: Definitely, and that's a bad disadvantage when you don't have it. Well, in any event, it's on the record, if you want anything further done, I'm not a bit chicken about this stuff, this is important stuff and it's an important case. It's a case where you've alleged the minimum sentence statute, and so the man is in danger of going to prison, he as well as the officers, including the one that was testifying when he dropped off, deserve the best. I hit the microphone pretty hard when we resumed and he woke up with a good start. I think we've done all we can do and I haven't found any reason to feel that we should at this time dismiss either, but I await your suggestions.

> \*    \*    \*    \*    \*    \*

THE COURT: Well, suffice to say that if you people were to request a switch,

fine, I don't like to do it because I think we'll finish this case comfortably tomorrow, but I'm still not—

MR. KIEF: I won't express any opinion until I talk with my client on that. My instincts are to say not to make any switches or to request any switches.

THE COURT: You say your inclination is not to.

MR. KIEF: Not to.

THE COURT: Well, at this point do that and we'll see what kind of—

MR. KEYES: I'd like to watch them a little more.

THE COURT: (Continuing)—effect it might have to have Dottie do it and she's a good bailiff, she'll take care of things. Okay, that's all.

During a later in-chambers discussion, the court again noted:

THE COURT: I want you people to be responsible for checking on our two sleepers, [S.] and whoever the other guy is, they're nodding again, I told Dottie to go see them, I don't know what else I can do, they did pretty well this morning.

Neither party made any requests throughout the trial relative to the jury. Apparently, appellant's counsel decided not to have jurors questioned or replaced because he did not believe his client was prejudiced, or he chose, as a trial tactic, to ignore what the court brought to his attention so that error could be claimed if the outcome of the trial were unfavorable. The trial court properly applied the law here by bringing the matter to the attention of counsel who apparently agreed with the court that no prejudice had resulted and nothing need be done.

At the sentencing hearing, appellant presented a letter signed by four courtroom observers indicating that they had observed four jurors sleeping during the trial. Appellant stated that he observed one juror sleeping during appellant's testimony. His attorney only observed one of the jurors sleeping. The trial court rejected the claim of four sleeping jurors, stating:

I was the one who discovered it, and there were two that I observed who could be called possibly nodding. By that I concede that their eyes were closed at that point and it was I who suggested we go back into Chambers. I say that because I don't want it inferred by anyone that I ever saw four different jurors ever nodding or having their eyes closed. I did not. And I watched the jury almost continuously.

Neither party indicated any problem with the jury throughout the course of this eight-day trial.

In *Henderson*, this court found that defendant waived his right to object to the jury misconduct because he failed to advise the court of the sleeping juror until after a verdict was returned and the alternate dismissed. Here, we commend the trial judge for directing counsel to the possibility that one or two jurors might be sleeping. During the sentencing hearing, at which time the court denied the motion for a mistrial, the court noted:

In this case I discovered the two people with their eyes closed. I brought it to the attention of the attorneys *and Mr. Yant* in chambers. The lady Bailiff checked with *the two jurors* who *claimed that they were not sleeping* and had closed their eyes briefly but were fully aware of what the evidence was. I specifically asked if the defense or, for that matter, the prosecutor, wanted corrective action taken, including but not limited to replacing the jurors with the two available alternates, and neither side made any request or motion; and on the strength of *Henderson*, I must, obviously, deny the motion [for a mistrial] on that ground. (Emphasis added).

We suggest that the better practice would have been for the court to question the jurors who were observed with closed eyes. However, this is not reversible error here. Appellant and his counsel were fully apprised of the potential jury misconduct and declined, even at the court's prompting during trial, to voir dire the jurors, seat their alternates or move for a mistrial. Instead,

appellant gambled on the result and now cries "foul."

This case is very similar to *United States v. Krohn,* 560 F.2d 293, 297 (7th Cir.), *cert. denied,* 434 U.S. 895, 98 S.Ct. 275, 54 L.Ed.2d 182 (1977). In *Krohn,* the defense counsel observed that a juror may have slept during parts of a trial. However, he requested no action until after a guilty verdict was returned. The seventh circuit court concluded:

> The only conclusion possible from this record is that defense counsel, fully aware of the existence of the problem that is now pressed upon us, *deliberately chose to proceed with the original jury to create a no-lose situation:* either a not guilty verdict would be returned or an arguably tainted guilty verdict would provide a basis for appeal. We strongly disapprove such a "gamesmanship approach to criminal justice." *United States v. Kopel,* 552 F.2d 1265 at 1275–76 (7th Cir.1977). "We should not, and will not, permit a litigant to sit quietly by observing the commission of what he claims at the appellate level is reversible error unless we are satisfied that the error was obvious, affected the substantial rights of the accused, and if uncorrected would be an affront to the integrity and reputation of judicial proceedings." *Id.* at 1274.

*Krohn,* at 297 (emphasis added). The court in *Krohn* found no "affront to the integrity and reputation of judicial proceedings," because the defendant was aware of the alleged jury misconduct and did nothing, and because the trial judge questioned the juror after the verdict and learned "he had 'dozed off' only once, and briefly at that, and had heard the testimony in the case." *Id.*

■ Likewise, in the instant case we find waiver of the alleged jury misconduct since appellant waited for a verdict, as the defendant in *Krohn,* before claiming error. *See also State v. Spratt,* 126 Ariz. 184, 187–88, 613 P.2d 848, 851–52 (Ariz.Ct.App. 1980) (failure to enter into stipulation or make motion concerning juror whom court and counsel observed sleeping, constitutes waiver, particularly where an alternate was available); *Merry v. State,* 166 Ind.App. 199, 230, 335 N.E.2d 249, 268 (1975) (defendant failed to show he was prejudiced by allegedly inattentive juror); *Adkins v. State,* 164 Ga.App. 273, 297 S.E.2d 47 (1982) (evidence at hearing on motion for new trial did not support claim juror was sleeping or dozing during trial).

■ The appellant argues that the trial court had a duty to "sua sponte" replace the sleeping jurors but this is a matter within the discretion of the trial court. Here, the trial judge was eminently fair, and looked to the attorneys for some direction. None was forthcoming, despite court prompting, so the court could infer that defense counsel and defendant, as a tactical matter, were willing to let the matter pass. The trial court noted in the record that it did not believe defendant was prejudiced and that it believed there was no reason to dismiss either juror. The trial continued to a verdict. In any event, whether the court should dismiss a sleeping juror is discretionary. *See United States v. Smith,* 550 F.2d 277 (5th Cir.), *cert. denied,* 434 U.S. 841, 98 S.Ct. 138, 54 L.Ed.2d 105 (1977); *United States v. Cameron,* 464 F.2d 333 (3d Cir.1972). We find no error in the court's actions.

Appellant also argues he was denied his right to trial by a jury of 12. *See* Minn.R. Crim.P. 26.01, subd. 1(4). Appellant argues that the trial court should have obtained his waiver to a trial by 12 competent jurors since a sleeping juror is not competent. At oral argument, appellant's counsel agreed that this was an innovative argument and that he knew of no case law supporting this claim. Under the circumstances of this case, appellant's argument that there was not a valid waiver of a "jury trial" is without merit.

### 2. *Effective Assistance of Counsel*

■ Appellant argues that his attorney denied him effective assistance of counsel when he failed to seek a mistrial or a *Schwartz* hearing regarding the sleeping

jurors. Here, the trial court asked appellant's counsel what his opinion was of the court's observation that one or two jurors may have been sleeping. Appellant's counsel replied: "I won't express any opinion until I talk with my client on that. My instincts are to say not to make any switches or to request any switches."

No requests for a mistrial, voir dire of the jury, or replacement with alternates was subsequently made. Apparently, this was the trial tactic chosen by appellant's counsel after the matter was discussed with his client.[1] Appellant's counsel conceded at oral argument that it *may* have been a trial tactic of the appellant's trial lawyer to gamble on the outcome.

Appellant leveled this same accusation at his attorney in a *pro se* post-trial motion. The trial judge denied the motion indicating that he had observed appellant's attorney, the Ninth District public defender, act in a very competent manner, and that the court considered him one of the best public defenders in the state.

Appellant has not met his "burden of proving facts showing incompetence of counsel by a fair preponderance of the evidence." *White v. State,* 309 Minn. 476, 479, 248 N.W.2d 281, 284 (1976).

### 3. *Lesser-included Offense*

Appellant complains of error for failure to submit the lesser-included offense of fifth-degree assault (simple assault). The court instructed the jury on second-degree assault (assault with a deadly weapon) and on reckless use of a firearm. The jury found appellant guilty of assault in the second-degree with respect to each victim.

Fifth-degree assault does not include the use of a dangerous weapon and is a misdemeanor. *See* Minn.Stat. § 609.224 (1984). Second-degree assault involves the use of a dangerous weapon and is a felony. *See* Minn.Stat. § 609.222 (1984).

The rule is that a trial court has to submit a lesser-included offense only if there is evidence which produces a rational basis for a verdict acquitting defendant of the offense charged and convicting him of the lesser offense. *Wolfe v. State,* 293 N.W.2d 41, 42 (Minn. 1980). *See also State v. Leinweber,* 303 Minn. 414, 422, 228 N.W.2d 120, 125–26 (1975).

Here, there is no controversy over whether appellant used his rifle in threatening the victims. Appellant testified that he gestured with the gun, jabbed it at a victim and intended to create an impression in their minds that he might shoot them. The trial court noted at sentencing:

Mr. Yant literally terrorized his victims at gunpoint for about an hour. *He repeatedly threatened to kill them. This is not controverted. He admitted it.* And he finally, according to the very best evidence from his friend, admitted that he fired two shots toward them from a public road. (Emphasis added).

There is not "a rational basis" for a verdict acquitting appellant of assault with a deadly weapon and convicting him of simple assault since appellant admitted he threatened his victims at gunpoint. *Compare State v. Jensen,* 356 N.W.2d 374 (Minn.Ct. App.1984), *aff'd on remand,* 373 N.W.2d 364 (Minn.Ct.App.1985), *pet. for rev. denied,* (Minn. October 11, 1985). The trial court did not err in failing to instruct the jury on fifth-degree assault, as a lesser-included offense of second-degree assault.

### 4. *Sentencing*

Appellant argues he was improperly sentenced because the court treated the second conviction as a "subsequent offense" even though the assault on the two women occurred contemporaneously. We agree.

Appellant was sentenced pursuant to Minn.Stat. § 609.11, subd. 5 (1984), which states:

---

**1.** As we noted in *State v. Hanson,* 366 N.W.2d 377, 379 (Minn.Ct.App.1985), and the supreme court noted in *State v. Cermak,* 350 N.W.2d 328, 332 n. 5 (Minn.1984), a direct appeal is not the best way to challenge the effectiveness of counsel since no post-trial affidavits are available to explain why counsel selected to pursue his chosen course of conduct.

Any defendant convicted of an offense listed in subdivision 9 in which the defendant * * * used, whether by brandishing, displaying, threatening with, or otherwise employing, a firearm, *shall be committed* to the commissioner of corrections *for a mandatory minimum term of imprisonment of not less than three years,* nor more than the maximum sentence provided by law. *Any defendant convicted of a second or subsequent offense* in which the defendant * * *, at the time of the offense, used a firearm, *shall be committed* to the commissioner of corrections *for a mandatory minimum term of imprisonment of not less than five years,* nor more than the maximum sentence provided by law. (Emphasis added).

The trial court sentenced appellant to three years on Count I and five years on Count II, with the sentences to run concurrently. The court relied on *State v. Mallory,* 329 N.W.2d 60 (Minn.1983), in construing the phrase "second or subsequent offense."

■ Both parties agreed at oral argument that *Mallory* does not apply here and that Minn.Stat. § 609.02 (1984) now clarifies the appropriate sentencing of a defendant convicted of two offenses which occurred in one incident.

"Second or subsequent violation" or "second or subsequent offense" means that prior to the commission of the violation or offense, the actor has been adjudicated guilty of a specified similar violation or offense.

*Id.,* subd. 11. Both parties indicated at oral argument that the trial court erred by sentencing appellant to five years on Count II, treating it as a "subsequent offense."

■ The trial court recognized that *Mallory* might not apply here and therefore provided an alternate sentence. The "alternate" or second sentence was two and one-half years on each count to be served consecutively. Sentencing in the alternate is an unusual procedure, apparently with-

out precedent. Nonetheless, under *State v. Olson,* 325 N.W.2d 13 (Minn.1982), the alternate sentences of two and one-half years on each count would be valid if there are mitigating factors to reduce the sentence below the mandatory minimum. The sentencing transcript shows the trial court was clearly aware of its authority under *Olson* to initiate sentencing without regard to statutory minimums. *See Olson* at 19; *see also State v. Abeyta,* 328 N.W.2d 443 (Minn.1983), *aff'd on remand,* 336 N.W.2d 264 (Minn.1983).

■ The remaining question is whether the sentences should be concurrent or consecutive. Minnesota Sentencing Guidelines II.F.2. *permits* the trial court to impose consecutive terms:

When the offender is convicted of multiple current felony convictions for crimes against different persons, and when the sentence for the most severe current conviction is executed according to the guidelines * * *.

*Id.* It is the prerogative of the trial court to make the decision as to whether the sentences should be concurrent or consecutive. *State v. Filippi,* 335 N.W.2d 739, 744–45 (Minn.1983). As directed by *State v. Pickett,* 358 N.W.2d 38 (Minn.1984), *aff'd as modified,* 375 N.W.2d 105 (Minn.Ct.App. 1985), we must remand this case in order "to give the trial court an opportunity to exercise its discretion one way or the other." *Id.* at 39.

Initially, appellant also raised the issue of whether the court should have departed dispositionally. That issue was withdrawn and need not be addressed here.

## DECISION

1. Appellant waived his right to object to sleeping jurors by not moving for a mistrial or by requesting the seating of alternate jurors.

2. Appellant received effective assistance of counsel.

3. The trial court did not err in failing to submit assault in the fifth degree as a lesser-included offense.

4. Appellant was improperly sentenced on the second conviction of second-degree assault by imposition of a five-year term. Although the trial court provided an alternate sentence, this is without precedent. Remanded for re-sentencing in accord with this opinion. *See State v. Pickett,* 358 N.W.2d 38, 39 n. 3 (Minn.1984), *aff'd as modified,* 375 N.W.2d 105 (Minn.Ct.App. 1985).

Affirmed on the merits and remanded for re-sentencing.

NIERENGARTEN, Judge, concurring specially.

The thrust of the appeal was aimed at the alleged jury misconduct, that is, that one or more jurors were periodically asleep during the trial, thereby denying defendant his right to trial by a jury of 12.

Any experienced trial judge and trial attorney can vouchsafe for the unquestioned fact that very few trials proceed to verdict with the full attention of every juror for every moment of the trial. Various distractions occur from time to time that interfere with full concentration on the drama unfolding before a jury. It may be a private problem of the individual juror, it may be the temperature in the courtroom, it may be the desultory nature of the presentment of evidence, it may even be the passage of a bird or a train past the window of the courtroom. In this case, the distraction, at its worst, may have been a short nap, which does not take the jurors attention off of the evidence anymore than an overheated courtroom, a day-dream, or observation of passing traffic.

There is no guarantee found anywhere, whether the constitution, the federal or state statutes, or the common law, that the entire jury will always maintain 100 per cent concentration on matters before it. That's the way it is and it's wishful thinking to hope otherwise.