529 N.W.2d 353 (1995)
STATE of Minnesota, Respondent,
v.
James Earl Ray FIELDS, Appellant.
No. C4-94-1033.
Court of Appeals of Minnesota.
March 14, 1995.
Review Denied April 27, 1995.
*354 Hubert H. Humphrey, III, Minnesota Atty. Gen., St. Paul, Michael O. Freeman, Hennepin County Atty., Paul R. Scoggin, Asst. County Atty., Minneapolis, for respondent.
Melissa Sheridan, Asst. State Public Defender, St. Paul, for appellant.
Considered and decided by SCHUMACHER, P.J., and RANDALL and CRIPPEN, JJ.

OPINION
RANDALL, Judge.
James Fields appeals from his convictions of attempted first degree felony murder, first degree assault, and three counts of second degree assault, arguing that conduct by witnesses and spectators prejudiced the jury and deprived him of his right to a fair trial. We affirm.

*355 FACTS
The charges against Fields were based on incidents that occurred on May 14, 1993, and August 21, 1993, and were caused by a dispute between Fields and one of the three shooting victims, Johnny Edwards. In the early afternoon of May 14, Edwards was outside of a home in south Minneapolis with a group of other people. The group included his cousin, Shari Edwards, and a Tina Milon.
Shannon Christianson and Fields pulled up in a car, and Shannon challenged Edwards to a fight. Edwards approached the car but turned and ran when he saw that Fields had a gun. Fields pursued Edwards through a side yard but Edwards escaped.
Several hours later, Edwards again was in front of the home and heard Shari Edwards cry out a warning. Edwards then noticed Fields and Christianson and saw that they were armed. Edwards ran after hearing several shots fired but was not wounded. Shari Edwards and Tina Milon, however, were wounded. Shari was wounded in her leg and identified Fields as one of the assailants. Tina Milon was wounded in her heel, but could not identify the person who shot her.
Early in the morning on August 21, Johnny Edwards was accosted by Fields and another man, Derek Brown, when Edwards was walking with his girlfriend. After hearing a gun cock, Edwards saw Derek Brown, told his girlfriend to run, and began to run. He then heard a shot and fell. Edwards testified that he saw Fields run up to him and try to shoot him in the head, but stated that he blocked the shot with his arm.
Edwards also testified that as he played dead, he saw Fields turn to Brown and say "I got him." Edwards dragged himself to his aunt's home and summoned help before passing out; his leg was amputated above the knee as a result of the gun shot wounds.
At trial, Fields asserted an alibi defense and claimed that on the nights of both incidents he was elsewhere. He presented the testimony of his girlfriend and a relative to support his alibis.
The record reflects a tense atmosphere during trial. In the middle of his direct examination, Johnny Edwards confronted Fields (who was present at the defense table) by saying:
[Edwards] Why do you keep smiling at me, huh?
[Prosecutor] Okay. Just pay attention to me, sir.
[Edwards] Don't smile at me man.
[Prosecutor] Just pay attention to me Mr. Edwards.
Field's attorney did not object to this exchange, and did not request a curative instruction.
Field's attorney did object during Shari Edwards' testimony. During the cross-examination, the attorney apparently heard Shari swear at him under her breath and said to her:
You have got to let me finish the question before you try to answer. Your honor, I would ask the court to instruct the witness not to swear in the courtroom.
The judge, the prosecutor, and the court reporter, however, did not overhear her say any swear words and the court gave no cautionary instruction.
The court noted and made a record of a lunchtime incident. The record reflects that Johnny Edwards' father was talking loudly and was either making or responding to threats inside the courtroom after a recess was called and while at least a few of the jurors were present.
The trial court dealt with this incident by conducting an individual voir dire of the jurors as to their knowledge of the incident. Pursuant to the attorneys' agreement, the voir dire was conducted without either attorney present. The trial judge reported that while some jurors had seen the incident, all jurors agreed that it would not affect their ability to be fair. The trial judge again addressed the jury at the close of evidence on the same issue, namely the scene created by Edward's father. Without the defendant or counsel present, the court asked whether the jurors could ignore everything except the evidence that had been presented and the instructions given by the court. After noting that the jurors indicated they could remain *356 fair and impartial, the judge permitted the attorneys to give their closing arguments.
The record shows the defense attorney specifically was given the opportunity to move for a mistrial based on the conduct mentioned above. But, after consulting with Fields, the defense attorney declined. Fields' attorney now argues that the incident merited a new trial for his client. He made the argument only after the guilty verdicts were returned and the case was set for sentencing.

ISSUES
I. Did Fields waive his claim to a new trial by failing to request a mistrial before the jury returned with their verdict?
II. Did the witnesses' and spectator's conduct prejudice the jury to the extent that Fields was denied his right to a fair trial?
III. Did Fields raise arguments in his pro-se supplemental brief that establish his right to a new trial?

ANALYSIS

I.
The state first argues that Fields has waived any claim of prejudice or right to a new trial by his failure to demand a mistrial. The state bases its argument on several cases in which this court has stated that "[w]hen based on a tactical decision, the failure to request a mistrial is a waiver of any right to one." State v. Smith, 448 N.W.2d 550, 556 (Minn.App.1989) (citing State v. Yant, 376 N.W.2d 487, 491 (Minn.App.1985), pet. for rev. denied (Minn. Jan. 17, 1986)), pet. for rev. denied (Minn. Dec. 29, 1989). Because Fields did not submit a reply brief, he has not responded to the waiver argument.
In Smith, the trial court admitted certain items of drug paraphernalia into evidence contingent on the state's ability to link the items to the defendant. 448 N.W.2d at 556. Because the state was unable to connect the evidence with the defendant, the trial court later struck the evidence and gave a cautionary instruction to the jury. Id. There was no objection or motion for a mistrial before the jury returned with their verdict. Id. The defendant then claimed prejudicial error. On appeal, however, this court held that "appellant failed to move for a mistrial and thus waived any right to raise the issue on appeal." Id.
Likewise, in Yant, this court held that the appellant waived his claim to a new trial by his failure to object or request a mistrial before the verdict was returned. This court noted that
[a]ppellant and his counsel were fully apprised of the potential jury misconduct and declined, even at the court's prompting during trial, to voir dire the jurors, seat their alternates or move for a mistrial. Instead, appellant gambled on the result and now cries "foul."
Yant, 376 N.W.2d at 490-491. This court quoted with approval from United States v. Krohn, 560 F.2d 293, 297 (7th Cir.), cert. denied, 434 U.S. 895, 98 S.Ct. 275, 54 L.Ed.2d 182 (1977), a seventh circuit case with similar facts. The Yant court noted
[t]he only conclusion possible from this record is that defense counsel, fully aware of the existence of the problem that is now pressed upon us, deliberately chose to proceed with the original jury to create a nolose situation: either a not guilty verdict would be returned or an arguably tainted guilty verdict would provide a basis for appeal. We strongly disapprove such a "gamesmanship approach to criminal justice."
Yant, 376 N.W.2d at 491 (citation and emphasis omitted).
On the singular facts of this case, we find the state's argument of waiver persuasive. We specifically state that not in every case would we so find. But here the record is clear that Fields and his attorney were given the chance to move for a mistrial. The record shows Fields and his attorney discussed their options and deliberately declined the invitation to move for a mistrial. That means, by definition, Fields and his attorney were willing to see what the jury's verdict would be. Had Fields moved for a mistrial and had that motion been denied or had Fields moved for strong curative instructions *357 and that motion was denied, we might have a different situation. But here, the trial court, cognizant of the inflammatory incident and the possible prejudice to appellant, gave him and his attorney a chance to move for a mistrial, which after private deliberation they declined. It is difficult to find anything improper about the way the trial court handled the issue.
Thus, Fields and his attorney, like the parties in Yant and Smith chose to gamble by taking a look at the verdict. On these facts, we conclude Fields waived his right to base a new trial motion on the conduct he could have assigned as error at trial. See Smith, 448 N.W.2d at 556; Yant, 376 N.W.2d at 491.

II.
If jury members have been exposed to potentially prejudicial material, a reviewing court should determine whether the material contributed to the verdict obtained. State v. Cox, 322 N.W.2d 555, 559 (Minn. 1982); State v. Halvorson, 506 N.W.2d 331, 336 (Minn.App.1993). The Minnesota Supreme Court has followed the U.S. Supreme Court's holding that any private communication or contact with a juror during a trial is considered "presumptively prejudicial." State v. Sanders, 376 N.W.2d 196, 205 (Minn. 1985) (citing Remmer v. United States, 347 U.S. 227, 229, 74 S.Ct. 450, 451, 98 L.Ed. 654 (1954)). The presumption, however, is rebuttable by the record on appeal. Id.
A reviewing court independently reviews the alleged prejudice to the jury. Id. Relevant factors to consider include:
(1) the nature and source of the prejudicial matter;
(2) the number of jurors exposed to the influence;
(3) the weight of the evidence properly before the jury; and
(4) the likelihood that curative measures were effective in reducing the prejudice.
Cox, 322 N.W.2d at 559.
Here, Fields argues that the witnesses' animosity and the conduct of the spectators prejudiced the jury and deprived him of his right to a fair trial. By contrast, the state asserts that the conduct of the witnesses, although inexcusable, was caused by the manner and tone of cross-examination by the defense attorney; the state notes that the defense attorney repeatedly cut-off witnesses' answers, admonished them to speak in a louder tone, and used "fighting words" like "liar" during cross examination.
We agree that the conduct of the witnesses was in large part attributable to the conduct of the defense attorney. The record indicates the defense attorney was abrasive during the witnesses' cross examination, and that he routinely interrupted their attempts to answer his questions. When considered against the four factors listed in Cox and Halvorson, we conclude the jury was not sufficiently prejudiced to entitle Fields to a new trial.

Nature and Source of the Prejudicial Matter
We conclude that the nature and source of the prejudicial matter was insufficient to warrant a new trial. Although Fields complains of prejudicial conduct by witnesses and spectators in the courtroom, this case does not present a situation in which a person in authority and thus more likely to sway the jury, such as a sheriff or bailiff, makes a prejudicial comment. See Cox, 322 N.W.2d at 559. Additionally, as mentioned earlier, the witnesses' hostile demeanor, in part, was provoked by the abrasive manner of the defense attorney. We conclude that Fields should not benefit from the hostile conduct of the witnesses. Cf. State v. Stillday, 417 N.W.2d 728, 733 (Minn.App.1988) (appellant may not apply the double jeopardy for a mistrial that he provoked), pet. for rev. denied (Minn. Mar. 18, 1988).
We conclude that the lunch time incident, although serious, did not call for an automatic mistrial, sua sponte on the trial court's own motion. We conclude the trial court's prompt voir dire of the jurors and careful instructions before closing argument sufficiently handled the issue.

Number of Jurors Exposed
Next, we conclude that the number of jurors exposed to the influence does not compel a new trial. After the individual voir dire by *358 the trial court, the judge noted that several, but not all, jurors had witnessed the lunchroom scene that involved Johnny Edwards' father and the defendant. There is no indication of the exact number of jurors that may have seen the incident. With regard to the general hostility during cross-examination, however, it is clear that all jurors witnessed the exchanges between the defense attorney and the witnesses. But, the jury also was aware of the hostile or attacking mode of the questioning by the defense attorney. We conclude this factor also does not warrant a new trial.

Weight of the Evidence Properly Before the Jury
When considering the weight of the evidence properly before the jury, we also conclude Fields is not entitled to a new trial. The state's case was based primarily on the testimony of two of the three shooting victims, Johnny Edwards and Shari Edwards. The other victim, Tina Milon was not able to identify the person who shot her. Both witnesses testified that Fields was the "shooter" on the May 14th and August 21st incidents. The testimony was unequivocal and generally consistent with earlier statements they had made, despite the defense attorney's attempts to impeach them during cross-examination.
The state also presented the bullets recovered from the victims' wounds and bullets recovered from a near-by home. The state was not able to present the weapon that had fired the bullets. While not overwhelming, the state presented a reasonably strong case of Fields' guilt based on eyewitness testimony.

Curative Measures
Finally, we conclude that the curative measures chosen by the trial court were reasonable and should have helped reduce any prejudice. The court instructed the witnesses to answer the defense attorney's questions on cross-examination, conducted a prompt individual in camera voir dire of the jurors after the lunchtime incident, and again, sua sponte, ascertained that the jurors could be fair and impartial before he permitted the attorneys to present closing arguments. These measures properly informed the jury of their duty to continue to view Fields as presumed innocent and continue to require the state to prove its case by proof beyond a reasonable doubt.
This court has said that when allegedly prejudicial material has been presented to the jury, the "better procedure" is to conduct a voir dire of the jury. McDonald v. State, 351 N.W.2d 658, 660 (Minn.App.1984), pet. for rev. denied (Minn. Oct. 16, 1984). Here, the trial court not only conducted such a voir dire, but also later again discussed with the jurors their obligation to remain objective, and instructed the jury to consider only the evidence presented during trial to make their decision. The court's curative measures fairly addressed any prejudice that may have been present. See Cox, 322 N.W.2d at 559; Halvorson, 506 N.W.2d at 336.

III.
In his pro se supplemental brief, Fields argues that he is entitled to a new trial because his convictions are contrary to the evidence and because the evidence is insufficient to support his convictions. We disagree.
"If the jury acted with due regard for the presumption of innocence and the necessity of overcoming it with proof beyond a reasonable doubt, [a reviewing] court should not disturb its verdict." State v. Underwood, 281 N.W.2d 337, 340 (Minn.1979) quoted in State v. Bliss, 457 N.W.2d 385, 390 (Minn. 1990). When reviewing the sufficiency of the evidence to support a conviction, a reviewing court is limited to a "painstaking analysis of the record to determine whether the evidence, when viewed in a light most favorable to the conviction, was sufficient to permit the jurors to reach the verdict which they did." State v. Webb, 440 N.W.2d 426, 430 (Minn. 1989). On appeal, a reviewing court must assume that "the jury believed the state's witnesses and disbelieved any evidence to the contrary." State v. Moore, 438 N.W.2d 101, 108 (Minn.1989).
The question of identification is a fact question for the jury to determine. See State v. Otten, 292 Minn. 493, 494, 195 N.W.2d 590, 591 (1972); State v. Sutherlin, 393 N.W.2d 394, 396 (Minn.App.1986) pet. for *359 rev. denied (Minn. Nov. 17, 1986); State v. Burch, 284 Minn. 300, 313, 170 N.W.2d 543, 552 (1969) (listing factors that the jury may use to determine the reliability of eyewitness testimony). "The weight and credibility of individual witnesses is for the jury to determine," and the jury is under "no obligation to believe a defendant's story." Bliss, 457 N.W.2d at 390 (citations omitted). Moreover, "[i]t is well established that a conviction can rest upon the testimony of a single credible witness." Id.
Fields argues that the two eyewitness identifications are insufficient as a matter of law to support his convictions because the witnesses saw their assailant under stressful and difficult conditions. We disagree. The jury verdicts indicate the jury found the eyewitness testimony credible and sufficient to overcome the presumption of innocence. See Underwood, 281 N.W.2d at 340.

DECISION
Fields waived his claim to a new trial based on improper conduct when he intentionally failed to request a mistrial based on that conduct. The witnesses' and spectator's conduct did not prejudice the jury to the extent that Fields was denied his right to a fair trial. Fields does not raise arguments in his pro se supplemental brief that entitle him to a new trial.
Affirmed.