**STATE of Minnesota, Respondent,**

v.

**Delenor (NMN) KELLEY, Jr.,
Petitioner, Appellant.**

No. C9–92–1640.

Supreme Court of Minnesota.

June 24, 1994.

John M. Stuart, State Public Defender, Lawrence W. Pry, Asst. State Public Defender, St. Paul, for appellant.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, and Michael O. Freeman, Hennepin County Atty., Thomas H. Frost, Asst. County Atty., Minneapolis, for respondent.

## OPINION

GARDEBRING, Justice.

Appellant, Delenor Kelley, was charged in Hennepin County District Court with criminal sexual conduct in the first degree in violation of Minn.Stat. § 609.342, subd. 1(c) (1992) and criminal sexual conduct in the third degree in violation of Minn.Stat. § 609.-344, subd. 1(c) (1992). Following a jury trial, appellant was convicted on both counts, and sentenced on the first degree conviction to 146 months in prison.

Appellant appealed on the following grounds: 1) that the jury was coerced into reaching a guilty verdict by the trial court's several *ex parte* directives to the jury that it continue deliberations, after the trial court was aware the jury was deadlocked, and 2) that juror misconduct, in the form of a threat of physical violence during deliberations, created an atmosphere of coercion and intimidation that may have influenced those holding out for acquittal to vote to convict. The court of appeals affirmed the conviction on the basis that, although the *ex parte* communications were error, they were neither coercive nor prejudicial, and the absence of counsel and the appellant during the exchanges did not affect the outcome of the trial, and further, that the trial court did not abuse its discretion in refusing to grant a new trial for jury misconduct. We reverse and remand for a new trial on the first degree criminal sexual conduct charge.

The incident for which appellant was convicted involved sexual contact with his girlfriend's 16 year-old sister. The state alleged that appellant accomplished forcible digital sexual penetration with the girl by threatening her and assaulting his girlfriend. Appellant's defense was that the sisters' story was fabricated.

Appellant's trial lasted approximately two days, beginning at 3:20 p.m. on Tuesday, April 28, 1992. The jury retired to deliberate at 2:50 p.m. on Thursday afternoon, April 30, 1992. The trial court included among its general jury instructions CRIMJIG 3.04.[1] At 5:30 p.m. the jury sent a note to the trial court stating "We need further definition of other serious bodily harm in order to determine first degree." After consulting with counsel, the trial court responded in writing as follows:

> The instructions in their entirety, including the term 'other serious bodily harm' is [sic] self contained. You should rely on your own experience, good judgment, and common sense to determine whether that element has been proven or not proven beyond a reasonable doubt.

The jury went to dinner at 6:00 p.m. and than continued deliberations until it retired for the night at 9:00 p.m. The jury reconvened at 9:00 a.m. Friday morning and at 9:20 a.m. the jury sent the judge the following note:

> The jury is deadlocked on the charge of CSC in the first degree. This deadlock shows no signs of breaking. After arguing in circles on the matter for several hours, we want to know how long we have to carry on * * * please advise.

Because the judge was at home sick, his clerk read him the note over the phone. Without consulting or notifying counsel, or making a record of the communication, the judge instructed his clerk to let the jury know that it should continue its deliberations. The clerk then typed "Continue deliberations" on the same note the jury had sent to the trial court and sent it back to the jury.

At 2:30 p.m. of the same day the jury sent the court a third note stating:

> For your information: Ten jurors want first degree. Two jurors who claim 'There is no way I'm going to accept first degree.' It is doubtful that a unanimous decision will ever be reached. However, we are unanimous on third degree. Please advise.

At 2:45 p.m. the clerk again called the judge at home and read him the note. Again with-

---

1. CRIMJIG 3.04 UNANIMOUS VERDICT–DUTY OF JURORS TO DISCUSS

In order for you to return a verdict, whether guilty or not guilty, each juror must agree with the verdict. Your verdict must be unanimous.

You should discuss the case with one another, and deliberate with a view to reaching agreement, if you can do so without violence to your individual judgment. You should decide the case for yourself, but only after you have discussed the case with your fellow jurors and have carefully considered their views. You should not hesitate to reexamine your views and change your opinion if you become convinced they are erroneous but you should not surrender your honest opinion simply because other jurors disagree or merely in order to reach a verdict.

COMMENT

*State v. Martin*, 297 Minn. 359, 211 N.W.2d 765 (1973).

If the jury should be deadlocked, this instruction may be read to them, but only if it was given in the original charge. The traditional *Allen* charge (see 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528) should no longer be used. See, *State v. Martin*, supra.

out consulting with or notifying counsel, the judge directed his clerk to instruct the jury that they should continue their deliberations. The clerk sent a note to the jury stating "keep working." At about 4:30 p.m. the jury returned a unanimous verdict of guilty on both counts. The trial court did not inform counsel of the exchange of notes until appellant and counsel were summoned to the courtroom for the delivery of the verdict at 4:35 p.m. Friday.

The following Monday one of the jurors called the court and stated that he wanted to discuss the jury deliberation. He stated that during deliberations another juror threatened him with physical violence. On May 6 and May 20 the trial court held a *Schwartz* hearing[2] to take the testimony of the jurors involved in the altercation. At these hearings jurors testified that during the deliberations there had been a confrontation in which one juror asked another to step out into the hall to settle their dispute. This juror also threatened to injure the second juror. The trial court concluded that no misconduct had occurred and denied appellant's motion for a new trial.

■ Appellant argues first that he is entitled to a new trial on the charge of first degree criminal sexual assault[3] because the trial court's *ex parte* communications with the jury may have coerced the jury to convict. It is well established that communication between the judge and jury is to be in the presence of the defendant and counsel.

It is fundamental that all proceedings in the trial of a criminal case shall be open and public and shall be conducted in the presence of defendant and counsel. The same is true with respect to any communication between the judge and jury after

the case is submitted and the jury has begun deliberations.

*State v. Mims*, 306 Minn. 159, 167–68, 235 N.W.2d 381, 387 (1975) (footnotes omitted). Minn.R.Crim.P. 26.03, subd. 1(1) requires that "[t]he defendant shall be present * * * at every stage of the trial." A.B.A. Standard for Criminal Justice 15–3.7(b) also states that "[t]he trial judge * * * should not communicate with a juror or the jury on any aspect of the case itself (as distinguished from matters relating to physical comforts and the like), except after notice to all parties and reasonable opportunity for them to be present." Standards for Criminal Justice § 15–3.7(b) (1986).

■ It was clearly error in this case for the trial court to communicate with the jury without notice to and outside of the presence of defendant and his counsel, especially after the court learned that the jury was deadlocked ten to two. However, the defendant is not entitled to relief if the error was harmless beyond a reasonable doubt. *State v. Ware*, 498 N.W.2d 454, 457–58 (Minn. 1993).[4] The test to determine if the communication was prejudicial is "whether or not the error affected the result; if it did not, it is not reversible error." *State v. Schifsky*, 243 Minn. 533, 544, 69 N.W.2d 89, 96 (1955). In determining whether this was harmless error the court may consider the nature or substance of the communication in addition to the fact that it was *ex parte*. *Rogers v. United States*, 422 U.S. 35, 40, 95 S.Ct. 2091, 2095, 45 L.Ed.2d 1 (1975). In this case, the substance of the communication is particularly troubling.

■ The trial court may, of course, give additional instructions to a jury after it has

---

2. In *Schwartz v. Minneapolis Suburban Bus Co.*, 258 Minn. 325, 328, 104 N.W.2d 301, 303 (1960), we spelled out a hearing procedure to be used when there is an allegation of juror misconduct. It provides for an examination of the jurors, in the presence of counsel, on the record and under oath, to determine the existence of misconduct and whether it was prejudicial.

3. The verdict on the third degree criminal sexual conduct charge is not an issue in this appeal because the jury had reached an unanimous verdict of guilty on that charge within the first 2 hours of deliberations, long before the ex parte

communications and the jury misconduct had occurred.

4. Traditionally, courts have held that a "defendant's absence from the critical stages of his trial merit[s] automatic reversal." *State v. Bouwman*, 354 N.W.2d 1, 8 (Minn.1984). However, this court held in *State v. McGath*, 370 N.W.2d 882, 884 (Minn.1985) that "the mere occurrence of an *ex parte* conversation between trial judge and juror does not constitute a deprivation of a constitutional right mandating automatic reversal."

begun deliberations. Minn.R.Crim.P. 26.03, subd. 19(3). However, we have held that an instruction to the jury that they must reach a verdict is coercive. *State v. Martin,* 297 Minn. 359, 366, 211 N.W.2d 765, 769 (1973). In *Martin* we adopted the procedures set forth in A.B.A. Standard Relating to Trial by Jury 5.4 (now 15.4) as proper for trial judges to use with a deadlocked jury. 297 Minn. at 372, 211 N.W.2d at 772. Standard 15–4.4(b) provides:

> If it appears to the court that the jury has been unable to agree, the court may require the jury to continue their deliberations and may give or repeat an instruction as provided in paragraph (a).[5] The court shall not require or threaten to require the jury to deliberate for an unreasonable length of time or for unreasonable intervals.

The commentary to Standard 15–4.4(b) states that:

> [A] court may send the jury back for additional deliberations even though the jury has indicated once, twice, or several times that it cannot agree or even after jurors have requested that they be discharged. * * * [A] jury should not be permitted to avoid a reasonable period of deliberation merely by repeated indications that it is unable to agree.
>
> Instead, the real question is whether the jury was required to deliberate an unreasonable length of time or for unreasonable intervals, or was threatened with the prospect of such unreasonably lengthy deliberations. The general rule is that the length of time a jury may be kept deliberating is a matter within the discretion of the trial judge, but abuse of that discretion requires reversal. The reasonableness of the deliberation period depends on such factors as the length of the trial, the nature or complexity of the case, the volume and nature of the evidence, the presence of multiple counts or multiple defendants, and the jurors' statements to the court concerning the probability of agreement.
>
> [A] trial judge may not tell a disagreeing jury that they will be kept together indefinitely or until they agree upon a verdict.

Standards for Criminal Justice § 5–4.4(b) (1986) (footnotes omitted).

This court has approved the use of the approach of Standard 15–4.4 because it is balanced and non-coercive. *State v. Packer,* 295 N.W.2d 266, 267 (Minn.1980). As we noted in *Martin,* by this instruction

> [T]he jurors are admonished only to consult and deliberate with a view to reaching an agreement consistent with their individual judgments. The emphasis is on further consideration of the evidence by all the jurors, and any juror, whether in the minority or majority, is invited to reexamine his views and change his opinion if he is convinced it is in error. But the thrust of the proposed charge is a positive one that no juror should surrender his honest conviction simply because of his fellow jurors' opinion or just to reach a verdict.

297 Minn. at 373, 211 N.W.2d at 773.

In this case, we conclude that while the court's communications were not coercive on their face, they did not provide the careful description of the obligations of the jurors, individually and collectively, which the *Martin* court approved. Instead the jurors were left with no sense of the limits of their duty. The repeated directions to "keep deliberating" may have led them to conclude that they were *required* to deliberate until a unanimous verdict was reached on each count.

---

5. Standard 15–4.4(a) provides:

> Before the jury retires for deliberation, the court may give an instruction which informs the jury:
> (i) that in order to return a verdict, each juror must agree thereto:
> (ii) that jurors have a duty to consult with one another and to deliberate with a view to reaching an agreement, if it can be done without violence to individual judgment;
> (iii) that each juror must decide the case for himself or herself but only after an impartial consideration of the evidence with the other jurors;
> (iv) that in the course of deliberations, a juror should not hesitate to reexamine his or her own views and change an opinion if the juror is convinced it is erroneous; and
> (v) that no juror should surrender his or her honest conviction as to the weight or effect of the evidence solely because of the opinion of the other jurors, or for the mere purpose of returning a verdict.

Moreover, appellant may well have been prejudiced by the trial court's *ex parte* communications with the jury because his attorney was not aware of the deadlock and had no chance to suggest a suitable course of action. Had appellant's counsel been notified, he could have requested that the court reread CRIMJIG 3.04 or turn to the language of Standard 15–4.4(b), as directed by *Martin.*

Further, because the trial court knew of the jury's numerical split and that the jury was leaning toward conviction, it should have exercised more caution. The jury had reported itself deadlocked first at 9:20 that morning and by 2:30, the time of the second note, it had been deadlocked for quite some time. The jury's request for a further definition of "other serious bodily harm" suggests that members of the jury were having difficulty in determining whether the state had proven all of the elements of first degree criminal sexual conduct. The later requests for advice made clear that the jury was deadlocked on this issue. While some *ex parte* communications may indeed be harmless, on these facts, where the jury was left virtually without guidance on the critical issue of how to handle a deadlock, we conclude that a new trial is warranted.

Appellant next argues that he is entitled to a new trial because jury misconduct, in the form of a threat of physical violence by a juror against another juror who was holding out for a verdict of acquittal on the first degree criminal sexual conduct charge, may have influenced or coerced the verdict. Although our analysis of the *ex parte* jury communications is dispositive of the need for a new trial, our concern about the trial court's handling of the jury misconduct issue also supports our conclusion.

█ Jury misconduct may, of course, be the basis for a new trial. Minn.R.Crim.P. 26.04, subd. 1(3). In Minnesota, the general rule is to disallow juror affidavits or testimony to impeach a verdict. Minn.R.Evid. 606(b). However, the rule provides an exception allowing jurors to testify "as to any threats of violence or violent acts brought to bear on jurors, from whatever source, to reach a verdict." This exception applies to cases where some of the jurors have, by overt acts, coerced other members of the jury. *State v. Hoskins,* 292 Minn. 111, 126, 193 N.W.2d 802, 812 (1972). In *Hoskins* this court defined the term "overt acts," as "those matters lying outside the personal consciousness of the individual juror, those things which are matters of sight and hearing, and therefore [are] accessible to the testimony of others and [are] subject to contradiction." To warrant a new trial, such overt acts "must have coerced a verdict which would otherwise not have been brought." 292 Minn. at 126, 193 N.W.2d at 812–13.

█ Once the court becomes aware of the possibility of juror misconduct it may conduct a hearing in order to determine the existence of misconduct and whether it was prejudicial. *Schwartz v. Minneapolis Suburban Bus Company,* 258 Minn. 325, 328, 104 N.W.2d 301, 303 (1960). Appellant bears the burden of demonstrating actual misconduct and prejudice at the *Schwartz* hearing. A trial court's decision to deny a motion for a new trial on the basis of jury misconduct will not be overturned absent an abuse of discretion. *State v. Kyles,* 257 N.W.2d 378, 381 (Minn.1977).

█ Under *Kyles* and *Hoskins,* we do not find an abuse of discretion on this record. However, we note the presence of certain questionable procedures in the *Schwartz* hearing which should have been avoided. Of particular concern are the trial court's examination of the threatened juror in the presence of the juror who threatened him, and also the questions directed to the threatened juror as to whether the conduct has affected his verdict. Because the standard for the presence of jury misconduct turns on the existence of overt acts, questions as to mental processes are not proper. Further, the fairness of the hearing is called into question by the presence of the threatening party when the threatened juror is being questioned.

The juror misconduct, coming as it did after the court's improper *ex parte* communications with the jury, may very well have coerced the two remaining holdouts to vote to convict. The incident occurred at approxi-

mately 3:15 or 3:30 p.m. on the afternoon of Friday, May 1, about one hour before the jury returned its verdict. Testimony given in the *Schwartz* hearing established that there was a threat of violence. All of the jurors testified that the juror in question was threatened. While we do not conclude on these facts that the juror misconduct, on its own, would warrant the granting of a new trial, it provides a secondary basis for our decision.

The trial court erred in communicating with the jury *ex parte* after being made aware of the 10 to 2 split with the jury leaning toward conviction. Because we find that this error, coupled with the jury misconduct was prejudicial to appellant, appellant is entitled to a new trial on the first degree criminal sexual assault charge.

Reversed and remanded.