David PAJUNEN, et al., Appellants,

v.

MONSON TRUCKING, INC., defendant
and third-party plaintiff,
Respondent,

v.

Cutler–Magner Company, Third-
party Defendant.

No. C0–99–1579.

Court of Appeals of Minnesota.

June 20, 2000.

Review Denied Aug. 15, 2000.

Gordon C. Pineo, Deal and Pineo, Virginia; and Paul D. Cerkvenik, J. Carver Richards, The Trenti Law Firm, Virginia, for appellants.

Mark M. Suby, Hansen, Dordell, Bradt, Odlaug & Bradt, P.L.L.P., St. Paul; and John M. Colosimo, Colosimo, Patchin, Aronson & Kearney, Virginia, for respondent.

Considered and decided by ANDERSON, Presiding Judge, SCHUMACHER, Judge, and PETERSON, Judge.

## OPINION

SCHUMACHER, Judge.

David and Marian Pajunen appeal the district court's handling of a Schwartz hearing into possible juror misconduct and its decision denying them a new trial. We affirm.

## FACTS

This case involves litigation stemming from an accident involving three 18–wheeler trucks on Ontario Highway 502. Two truck drivers, both driving trucks owned by respondent Monson Trucking, Inc., decided to pull off the road because of icy conditions. The first truck, travelling north, pulled off the road at the bottom of a hill, blocking part of the northbound lane. The other truck, traveling south, pulled off the road before it reached the hill, blocking part of the southbound lane about 300 feet north of the first truck. A third truck, driven by David Pajunen, came northbound over the hill and tried to steer its way between the trucks. After steering around the truck in the northbound lane, Pajunen was unable to steer his truck back into the northbound lane and struck the truck parked in the southbound lane.

The jury in a first trial found Pajunen 35% at fault and the Monson drivers together 65% at fault. Monson appealed, and this court granted a new trial on the ground that the trial court erred by aggregating the fault of the two Monson drivers. *Pajunen v. Monson Trucking, Inc.*, No. C5–97–2223, 1998 WL 404992 (Minn.App. July 21, 1998), *review denied* (Minn. Sept. 22, 1998).

In a second trial, the jury returned a defense verdict, finding Pajunen 100% at fault for the accident. The jury verdict was a 5/6ths verdict. That same afternoon, upset about the jury deliberations the jury foreperson—the lone dissenting juror—called Pajunen's attorney. According to the foreperson, another juror stated during deliberations that he had experience as a truck driver, and based on that experience his view of the law in Minnesota was that whenever a moving vehicle is involved in an accident with a stopped vehicle, the moving vehicle is always at fault. Although the foreperson immediately pointed out that the judge's legal instructions contained no such rule, the juror did not retract or correct his statement.

Based on this information, Pajunen moved for a Schwartz hearing to investigate possible juror misconduct. A Schwartz hearing is a posttrial hearing in which jurors are examined under oath to address concerns of juror misconduct. *See Schwartz v. Minneapolis Suburban Bus Co.*, 258 Minn. 325, 328, 104 N.W.2d 301, 303 (1960). The district court granted the motion. When the district court conducted the Schwartz hearing, however, it did not ask any questions specifically directed at the incident the foreperson reported. Instead, the district court asked each of the jurors the following two questions:

1. In reaching your verdict, did you follow the law as given by the Court and disregard any statement of the law that you may have heard or seen from any other source?

2. Did you in any way base your verdict upon any understanding of the law that you may harbor that is not in accordance with [the law given by the Court]?

The court did not allow the parties' attorneys to ask the jurors any questions.

Pajunen's attorneys objected, contending that the two general questions would be ineffective in discovering any prejudice that may have resulted from the juror's statement. Nonetheless, the district court conducted the Schwartz hearing by asking each juror only those two questions. Each juror answered yes to the first question and no to the second. Based on those answers, the court concluded that no juror misconduct had occurred and denied Pajunen's subsequent motion for a new trial.

## ISSUES

1. Did the district court abuse its discretion in conducting the Schwartz hearing?

2. Did the district court abuse its discretion by denying Pajunen a new trial?

## ANALYSIS

■■■ The purpose of a Schwartz hearing is to investigate potential juror misconduct and prevent the practice of attorneys contacting and questioning jurors after a verdict has been rendered. *Arney v. Helbig*, 383 N.W.2d 4, 6 (Minn.App.1986). Such a hearing also allows the losing party to establish a record that might indicate jury misconduct. *Zimmerman v. Witte Transp. Co.*, 259 N.W.2d 260, 262–63 (Minn.1977). A trial court has the discretion to grant a new trial based on evidence of juror misconduct. *State v. Kelley*, 517 N.W.2d 905, 910 (Minn.1994). At a Schwartz hearing, the movant bears the burden of demonstrating actual misconduct and prejudice. *Id.*

■■■ There is very little law regarding how a Schwartz hearing should be conducted. We do know that "the manner in which a Schwartz hearing is conducted rests within the sound discretion of the trial court." *State v. Olkon*, 299 N.W.2d 89, 109 (Minn.1980). Our rules of evidence also offer some guidance about the proper conduct of a Schwartz hearing. In recognition of the importance of privacy in jury deliberations, the rules of evidence prohibit inquiry into a juror's "mental processes" related to the verdict:

> **Inquiry into validity of verdict or indictment.** Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror, or as to any threats of violence or violent acts brought to bear on jurors, from whatever source, to reach a verdict. Nor may a juror's affidavit or evidence of any statement by the juror concerning a matter about which the juror would be precluded from testifying be received for these purposes.

Minn. R. Evid. 606(b).

But inquiring into the jurors' "mental processes" is exactly what Pajunen wanted the district court to do. Questions about the "effect [the juror's statements] had on jurors," and "whether any jurors' decisions were influenced by the statements" are questions that implicate the jurors' "mind[s] or emotions as influencing the juror[s] to assent to or dissent from the verdict or indictment" and the jurors' "mental processes." Minn. R. Evid. 606(b). As such, Rule 606(b) would appear to prevent the district court from asking such questions.

At least one Minnesota Supreme Court decision, however, has specifically rejected a district court's refusal to probe jurors' mental processes. *Schrupp v. Hanson*, 306 Minn. 151, 151–54, 235 N.W.2d 822, 822–24 (1975); *see also Ossenfort v. Associated Milk Producers, Inc.*, 254 N.W.2d 672, 687 (Minn.1977) ("The trial court asked each juror whether the headline had any effect on its resolution of the case, and each answered that it had not.") (decided May 20, 1977). The Minnesota Rules of Evidence, however, were not effective until July 1, 1977, almost two years after *Schrupp* was decided. As a result, its continuing authority is open to doubt.

But post-*Schrupp* cases evince the same confusion. In *Olkon*, the supreme court observed without comment that the "juror who had had the contact with his employer testified that the contact had not influenced his decision-making." 299 N.W.2d at 109. On that same page of the opinion, however, the Court rejected the defendant's contention that the district court should have inquired into the possible predisposition of one of the jurors to convict. Quoting Rule 606(b), the Court held that "under the rule, the thought processes of a juror are protected from later inquiry." *Id.* *Olkon* thus does not stand for the proposition that a district court may investigate juror misconduct by inquiring into the mental processes of the jurors.

In dicta, the Minnesota Supreme Court has reemphasized that investigating possible juror misconduct using questions about a juror's mental processes is not proper:

> Of particular concern are * * * the questions directed to the threatened juror as to whether the conduct has affected his verdict. Because the standard for the presence of jury misconduct turns on the existence of overt acts, questions as to mental processes are not proper.

*Kelley*, 517 N.W.2d at 910; *see also State v. Lehman*, 511 N.W.2d 1, 3 n. 1 (Minn. 1994) (questions to jurors "about their thought processes in concluding the defen-dant was guilty" are "forbidden at a Schwartz hearing").

The information Pajunen sought to discover in the Schwartz hearing—whether any juror based his or her verdict in part on the juror's mistaken statement of the law—is shielded from inquiry by Rule 606(b). Pajunen's argument that Rule 606(b) allows inquiry into jurors' mental processes in reaching a verdict is based on cases decided before the rules of evidence were adopted and on cases that do not squarely consider and decide the issue whether such inquiry is permitted. As a result, the court did not abuse its discretion by refusing to ask or permit questions directed to those issues.

Nor did the trial court abuse its discretion in refusing to ask questions about exactly what the jurors said. Absent any serious dispute between the parties about what was said, or any allegations in the affidavit requesting the Schwartz hearing suggesting the presence of additional possible overt acts, the trial court was within its discretion to refuse to inquire further.

We will not reverse a trial court's decision to deny a motion for a new trial on the basis of jury misconduct absent an abuse of discretion. *State v. Kyles*, 257 N.W.2d 378, 381 (Minn.1977). Because the Schwartz hearing did not disclose evidence of overt acts constituting juror misconduct, the district court did not abuse its discretion by denying Pajunen's motion for a new trial.

## DECISION

The district court did not abuse its discretion in conducting the Schwartz hearing or in denying Pajunen's motion for a new trial.

**Affirmed.**