*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-1604**

State of Minnesota,
Respondent,

vs.

Charles Lafond Lewis,
Appellant.

**Filed October 6, 2014
Affirmed
Reyes, Judge**

Hennepin County District Court
File No. 27CR124248

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Linda M. Freyer, Assistant County
Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Rochelle R. Winn, Assistant
Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Peterson, Presiding Judge; Reyes, Judge; and
Klaphake, Judge.[*]

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to
Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**REYES**, Judge

On appeal from his conviction of first-degree criminal sexual conduct, appellant argues that the district court abused its discretion when it twice instructed the jury to continue deliberating when the jury was deadlocked 11 to 1, and the holdout juror stated that he had reasonable doubt, was adamant that he would not change his mind, and felt badgered by the other jurors. We affirm.

## FACTS

On February 9, 2012, at around 4:00 p.m., police responded to a report of sexual assault in downtown Minneapolis. The victim, E.C., reported that she had been sexually assaulted by appellant Charles Lafond Lewis. E.C. had spent the previous evening with friends, smoking marijuana and drinking at her apartment. Heavily intoxicated, she decided to go out for a walk. On the street, she struck up a conversation with Lewis, whom she had never met, and asked if he had any alcohol. Lewis invited E.C. to his apartment, and they spent the night there, drinking heavily. Neither Lewis nor E.C. slept during the night. At 11:00 a.m. on February 9, they left to buy more liquor and returned. About 10-15 minutes after they had resumed drinking, Lewis's behavior allegedly "changed," and he sexually assaulted E.C. E.C. sustained physical injuries, including scratches and red marks on both sides of her neck, redness on her nose, a raised red mark on her cheek, red marks on the inside of her upper lip, and a swollen left ankle. DNA taken from a swab of Lewis's genitals matched E.C.'s DNA, and a sample taken from E.C.'s genitals matched Lewis's DNA.

Lewis was charged, in relevant part, with one count of first-degree criminal sexual conduct in violation of Minn. Stat. § 609.342, subd. 1(e)(i) (2010).  The state presented the testimony of E.C., E.C.'s mother, four police officers, the nurse that examined E.C., and two forensic scientists.  Lewis did not testify but his attorney argued that he and E.C. had consensual sex.  In addition, he argued that she lied about what occurred because she was afraid of her boyfriend, who was angry with her for staying at another man's home and refused to go to the hospital with her.

The district court read to the jury 10 *Minnesota Practice*, CRIMJIG 3.04 (2006), the standard jury charge regarding unanimous verdicts in criminal cases.[1]  The jury deliberated for about six hours over two days before sending a note to the district court, which stated:

> At this point[,] we have one juror adamant that "he has doubt and is not willing to change his mind."

> We as a group have stated that we need to understand the doubt and if it is reasonable.

---

[1] CRIMJIG 3.04 states, in relevant part:

> In order for you to return a verdict, whether guilty or not guilty, each juror must agree with that verdict.  Your verdict must be unanimous.
> You should discuss the case with one another, and deliberate with a view toward reaching agreement, if you can do so without violating your individual judgment.  You should decide the case for yourself, but only after you have discussed the case with your fellow jurors and have carefully considered their views.  You should not hesitate to reexamine your views and change your opinion if you become convinced they are erroneous, but you should not surrender your honest opinion simply because other jurors disagree or merely to reach a verdict.

At this point[,] he is stating that he doesn't want to be "badgered to change his mind."

He has said repeatedly that this is where he is at, and he doesn't want to waste our time.

Please advise as to how to proceed.

Lewis argued that the jury was deadlocked and moved for a mistrial, which the state opposed. The district court denied Lewis's motion, concluding that the motion was premature because of the "relatively short period of deliberations." After calling the jury from their deliberations, the district court stated, "[W]hen you were sworn, you were sworn to give each side a fair hearing and reach a unanimous verdict." The district court then re-read 10 *Minnesota Practice*, CRIMJIG 3.04 (2006), reminding the jury that "[i]n order for you to return a verdict, whether guilty or not guilty, each juror must agree with that verdict. Your verdict must be unanimous." The district court then instructed the jury to resume deliberations.

After a couple more hours of deliberations, the jury submitted another note, which the district court received almost an hour later. The noted stated:

We remain at an impass[e]. One juror remains unwilling to join the consensus.

He is forceful that his position will not change. At this point[,] he is persistent in his position.

He continues to state that he has "reasonable doubt[,]" and he is not willing as a person to change his mind.

We have tried multiple threads to build con[s]ensus, but it only causes more defensiveness.

Please advise.

4

Lewis renewed his motion for a mistrial on the basis that the jury was hopelessly deadlocked. The district court noted that the tone of the second note raised some concerns but ultimately denied Lewis's motion based on the fact that the "approximately eight hours" for which the jury had been deliberating "falls short of a time . . . that [the jury] can't reach a verdict." The district court called the jury from its deliberations and repeated a portion of CRIMJIG 3.04:

> I'm going to ask you to return to the jury room at this time.
>
> I want you to remember that what is being asked of you, that you decide the case for yourself, but only after discussing it with your fellow jurors.
>
> I don't want you to hesitate to reexamine your views or to change your opinion if you become convinced that it is erroneous, but you should not surrender your honest opinion merely because other jurors disagree, or merely in order to reach a verdict.

Shortly after resuming deliberations, the jury returned a guilty verdict.

At sentencing, Lewis again moved for a mistrial. The district court denied Lewis's motion and explained its rationale as follows:

> What I chose to do was to read that portion of [10 *Minnesota Practice*, CRIMJIG 3.04 (2006)] concerning duties twice. . . . I thought then and I think now that that was the appropriate response.
>
> I have to note, however, a couple of important issues. One is . . . there was an extended period of time between the time the second note came and the time the jury came out. While I cannot be certain, I presume that their discussions continued. . . . [T]here would be nothing untoward about that, as they were all continued to be assembled for deliberation. At no point did I ask or did anyone suggest that

5

at the time they sent the note out that they ceased their discussions.

I take note of [the prosecutor's] point that we don't know what happened in the jury room, as is proper. We can speculate collectively and individually about what we believe happened. I don't know that that's particularly helpful. What I do know is that the extended period of time between the time the note came and the time that we were assembled in the courtroom was a period during which a continuing discussion would have been appropriate, and . . . because the jury had not been separated from one another, I assume that they continued to talk . . . .

I think, [defense counsel], you focus on the relatively brief period between the time the instruction was read and the time that they returned with their verdict, which was approximately, . . . 5, 10 minutes. I know that we had not really left the courtroom in any meaningful way before the deputy noted that the jury had a verdict. I'm not going to advance any speculation concerning how that happened, but . . . I don't see anything improper about what happened, nor do I see . . . evidence of a problem with deliberation. Again, they had at least an hour and maybe more to continue their discussions. We brought them in. I read the – the piece from [10 *Minnesota Practice*, CRIMJIG 3.04 (2006)], sent them back and they came back shortly. Without [being] in the jury room, I don't know that any of us know what happened there and . . . I don't think that we should speculate. I think that the verdict was proper, and I'm going to deny your motion for mistrial on that basis.

Lewis was sentenced to 306 months in prison. This appeal follows.

**D E C I S I O N**

"We apply [an] abuse of discretion standard when reviewing a district court's charge to a jury to continue deliberating after the jury has indicated it [is] deadlocked." *State v. Cox*, 820 N.W.2d 540, 550 (Minn. 2012). It is reversible error to coerce a jury into reaching a unanimous verdict. *Id.* "A court, therefore, can neither inform a jury that

6

a case must be decided, nor allow the jury to believe that a 'deadlock' is not an available option." *State v. Jones*, 556 N.W.2d 903, 912 (Minn. 1996) (citing *State v. Martin*, 297 Minn. 359, 211 N.W.2d 765 (1973)). It is not coercive to instruct a deadlocked jury to continue deliberating, so long as the district court does not "require or threaten to require the jury to deliberate for an unreasonable length of time or for unreasonable intervals." *State v. Kelley*, 517 N.W.2d 905, 909 (Minn. 1994) (quotation omitted). "The reasonableness of the deliberation period depends on such factors as the length of the trial, the nature or complexity of the case, the volume and nature of the evidence, the presence of multiple counts or multiple defendants, and the jurors' statements concerning the probability of agreement." *Id.* (quotation omitted). We review the district court's instructions to the jury, taken as a whole, to determine whether they contained "material misstatements [of] the law or coerced [the] jury toward a unanimous verdict." *Cox*, 820 N.W.2d at 550.

Lewis argues that the district court abused its discretion by instructing the jury to continue deliberating despite the jury's repeated insistence that it was deadlocked 11 to 1. We disagree.

The *Martin* "decision established two clear rules – that it is error to charge the jury that the case must be decided, and that it is error to give an instruction that specifically encourages the minority to reconsider its position without encouraging the same of the majority." *State v. Olsen*, 824 N.W.2d 334, 338 (Minn. App. 2012) (citing *Martin*, 297 Minn. at 368–69, 370, 372–73, 211 N.W.2d at 770, 772–73), *review denied* (Minn. Feb. 27, 2013). In *Kelley*, the supreme court applied these principles to hold that a district

court's ex parte instructions to the jury, split ten to two, to "[c]ontinue deliberations" and "keep working" was reversible error. 517 N.W.2d at 907-08, 911.

But a district court's reading of CRIMJIG 3.04 to the jury generally does not coerce a jury to reach a verdict. *Jones*, 556 N.W.2d at 912. In *Jones*, the initial jury instruction was misleading, and may have left the jury with the impression "that it was required to reach a unanimous verdict, guilty or not guilty." *Id.* at 911. But when the jury was deadlocked two days into deliberations and split 11 to 1, the district court read CRIMJIG 3.04 verbatim before instructing the jury to continue deliberating. *Id.* at 908, 911. This was the last instruction to the jury before it returned a guilty verdict, and taken as a whole, the instructions did not communicate to the jury that it was required to reach a verdict. *Id.* at 911; *see Cox*, 820 N.W.2d at 551-52 (concluding that the district court did not coerce the jury to reach a verdict in part because the district court instructed the jury on CRIMJIG 3.04 before deliberations and did not communicate to the jury that a verdict needed to be reached in response to a question from the jury); *State v. Buggs*, 581 N.W.2d 329, 337-38 (Minn. 1998) (holding that district court's instructions to deadlocked jury that it "[c]ontinue to try to work through [its] impasse" and that "further introspective contemplation of the issue" might be helpful were noncoercive and were ameliorated by the district court's initial reading of CRIMJIG 3.04 to the jury).

Lewis argues that the district court's statement to the jury that "you were sworn to give each side a fair hearing and reach a unanimous verdict" was coercive and that the district court's repeated reading of CRIMJIG 3.04 "no longer serves as an instruction; no

8

matter how it may be softened it becomes a lecture sounding in reproof." *United States v. Seawell*, 550 F.2d 1159, 1163 (9th Cir. 1977).

In this case, the district court's initial charge to the jury included CRIMJIG 3.04, which "amount[s] to an adequate description of the jury's role and duty." *Jones*, 556 N.W.2d at 912. During the next day of deliberations, the jury returned with a note advising of the 11-1 split. Because the jury had been deliberating for a "relatively short period," the district court re-read CRIMJIG 3.04 to the jury. The district court's statement to the jury that "you were sworn to give each side a fair hearing and reach a unanimous verdict," considered in isolation, might have risked causing the jury to believe that a deadlock was not an available option. *Id.* But taken as a whole, any potentially coercive effect was cured when, after the jury continued to deliberate into the afternoon and returned with a note communicating that it remained at an impasse, the district court re-read a portion of CRIMJIG 3.04.

Here, as in *Jones*, CRIMJIG 3.04 was the last instruction to the jury before it returned a guilty verdict, and taken as a whole, the instructions did not communicate to the jury that it was required to reach a verdict. *Id.* at 911. The district court expressed its concern with the tone of the jury's second note, consulted the parties,[2] and properly responded, exercising great care in electing to re-read a portion of CRIMJIG 3.04 to the jury. Moreover, the period of jury deliberations was not excessive in light of the length

---

[2] This case is distinguishable from *Kelley*, where the district court's failure to notify the parties about the jury's notes, in addition to its repeated ex parte instructions to continue deliberations even though the jury had twice said that it was deadlocked, warranted a new trial. 517 N.W.2d at 909-10.

of the trial and the number of witnesses.  Accordingly, we hold that the district court's instructions to the jury to keep deliberating were well within its discretion.

**Affirmed.**