*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0375**

Gary Cyril Jenco, et al.,
Appellants,

vs.

Paul James Crowe, M.D., et al.,
Respondents,

John Y. Hendricks, M.D., et al.,
Respondents,

North Memorial Health Care, d/b/a North Memorial Medical Center,
Respondent.

**Filed January 26, 2015
Affirmed
Toussaint, Judge**[*]

Hennepin County District Court
File No. 27-CV-12-7335

Thomas Francis Handorff, Access Justice, Minneapolis, Minnesota (for appellants)

Melissa D. Riethof, Barbara Ann Zurek, Meagher & Geer, P.L.L.P., Minneapolis, Minnesota (for respondents Paul James Crowe, M.D., et al)

Jennifer M. Waterworth, Gislason & Hunter, LLP, Minneapolis, Minnesota (for respondents John Y. Hendricks, M.D., et al)

Mark W. Hardy, Geraghty O'Loughlin & Kenney, PA., St. Paul, Minnesota (for respondent North Memorial Health Care)

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

Considered and decided by Chutich, Presiding Judge; Reilly, Judge; and Toussaint, Judge.

## UNPUBLISHED OPINION

**TOUSSAINT**, Judge

In this medical-malpractice action, appellants challenge the pretrial dismissal of their negligent-treatment claims against three of the respondents and a jury verdict in favor of the remaining respondents. We affirm.

## DECISION

Appellant Gary Cyril Jenco underwent three back surgeries over the course of March 19 and 20, 2008. The first surgery was a laminotomy to remove bone on the spine that was causing nerve pain. The second and third surgeries were to remove hematomas that were surgical complications and were causing Jenco to suffer from cauda equina syndrome, a dysfunction of the spinal nerves in the spinal canal caused by compression. Jenco remained in the hospital for two months following the surgeries, and spent many months thereafter at a rehabilitation center. He continues to suffer extensive paralysis of the lower extremities and related disabilities.

In March 2012, Jenco and his wife (appellants) initiated this medical-malpractice action against multiple defendants for personal injuries and loss of consortium. The district court dismissed a number of claims before trial, and the jury returned a verdict in favor of the remaining defendants. Appellants assert that the district court erred by (1) dismissing their negligent-treatment claims against respondents North Memorial Health Care, John Y. Hendricks, M.D., and Andrew Johnson Houlton, M.D., and

2

(2) denying their motion for a new trial of their claims against the remaining respondents on grounds of an allegedly improper evidentiary ruling and juror bias. We address each argument in turn.

## I.

Appellants first challenge the district court's pretrial dismissal of their negligent-treatment claims against North Memorial, Dr. Hendricks, and Dr. Houlton. To prevail on a negligent-treatment claim, a plaintiff must prove (1) the standard of care recognized by the medical community in relation to the defendant's conduct; (2) that the defendant's deviated from that standard of care; and (3) that the departure from the standard was the direct cause of the plaintiff's injuries. *Dickhoff ex rel. Dickhoff v. Green*, 836 N.W.2d 321, 329 (Minn. 2013). Moreover, as a preliminary matter, under Minn. Stat. § 145.682 (2014), medical-malpractice plaintiffs are required twice in the early stages of litigation to present expert affidavits supporting their claims. The second of these affidavits must identify the experts who plaintiff intends to call at trial. *Id.*, subd. 4. Failure to comply with the requirements of Minn. Stat. § 145.682 results in mandatory dismissal of the claims for which expert testimony is necessary. *Id.*, subd. 6. This court reviews a district court's dismissal for failure to comply with Minn. Stat. § 145.682 for an abuse of discretion. *Broehm v. Mayo Clinic Rochester*, 690 N.W.2d 721, 725 (Minn. 2005).

In order to comply with the expert-identification requirements of Minn. Stat. § 145.682, subd. 4, a plaintiff must submit an affidavit from an expert who is qualified to testify regarding the subject matter of the plaintiff's claims. *Teffeteller v. Univ. of Minn.*, 645 N.W.2d 420, 427 (Minn. 2002). In the area of medical-malpractice, Minnesota

3

courts have held that medical professionals are not qualified to testify outside their areas of practical expertise. *See Teffeteller*, 645 N.W.2d at 427 (holding that district court did not abuse its discretion by determining that doctor without specialization in field of pediatric oncology or experience with bone-marrow transplants was not qualified to testify as to standard of care for treating bone-marrow transplant patient); *Cornfeldt v. Tongen*, 262 N.W.2d 684, 692, 694 (Minn. 1997) (affirming exclusion of testimony of gastroenterologist and pathologist about the actions of an anesthesiologist); *Swanson v. Chatterton*, 281 Minn. 129, 136, 140, 160 N.W.2d 662, 666, 669 (1968) (holding that district court did not abuse its discretion in excluding testimony by internist regarding standard of care for orthopedic surgeon). The Minnesota Supreme Court has emphasized that "the sufficiency of the foundation to qualify a witness as an expert . . . is primarily a question for the determination of the trial court." *Swanson*, 281 Minn. 136-37, 160 N.W.2d at 667; *see also Teffeteller*, 645 N.W.2d at 427 ("Our case law makes very clear that we are to apply a very deferential standard to the district court when reviewing a determination as to expert qualification, reversing only if there has been a clear abuse of discretion." (quotation omitted)).

## A.

Appellants asserted a negligent-treatment claim against North Memorial based on the alleged negligence of the nursing staff, and submitted the expert affidavit of Mary Zimmerman, R.N., in support of this claim. The district court dismissed the claim against North Memorial based on its determination that, while Zimmerman was qualified to testify regarding the standards of care applicable to North Memorial's nursing staff, she

4

was not qualified to testify that any departures from that standard of care caused Jenco's injuries. Nor, the district court reasoned, had any other expert qualified to testify as to causation opined that the nursing staff's alleged departures from the standard of care had caused Jenco's injuries. The district court explained that only one of appellants' experts, Avi Bernstein, M.D., was qualified to testify to the causation of Jenco's injuries and noted that Dr. Bernstein had not identified conduct by nursing staff as a cause of Jenco's injuries.

The district court's analysis is sound. Nurses generally are not qualified to testify as to medical causation. *See, e.g., Vaughn v. Mississippi Baptist Med. Ctr.*, 20 So.3d 645, 652 (Miss. 2009) (collecting authority for "majority rule that nursing experts cannot opine as to medical causation and are unable to establish the necessary element of proximate cause"). Zimmerman is a registered nurse and certified legal nurse consultant. Nothing in Zimmerman's report suggests that she has education or experience that allows her to opine on the cause of Jenco's injuries. And nothing in Dr. Bernstein's report connects any conduct on the part of North Memorial's nursing staff to Jenco's injuries. Accordingly, we conclude that the district court did not abuse its discretion by dismissing the negligent-treatment claims against North Memorial.

**B.**

Appellants also asserted negligent-treatment claims against Drs. Hendricks and Houlton, anesthesiologists who monitored Jenco during and after the first surgery, and submitted an affidavit from Lowell Feinstein, D.O., a board certified anesthesiologist, in support of these claims. The district court dismissed the claims against Drs. Hendricks

5

and Houlton based on its determination that Dr. Feinstein was not qualified to testify as to causation, and because no qualified expert had opined that the alleged departures from the standard of care by Drs. Hendricks and Houlton had caused Jenco's injuries.

Again here, the district court's analysis is sound. There does not appear to be a categorical rule against anesthesiologists testifying as to causation. *See, e.g., Schneider v. Little*, 49 A.3d 333, 358 (Md. Ct. Spec. App. 2012) (holding that anesthesiologist was qualified to testify regarding cause of spinal cord injury during vascular surgery based on his experience as anesthesiologist and experience teaching residents about prevention of spinal cord injuries during vascular surgery), *rev'd on other grounds* 73 A3d 1074 (Md. 2013). But Dr. Feinstein's education and experience are limited to anesthesiology, and nothing in Dr. Feinstein's report suggests that he has particular experience with cauda equina syndrome and its causes. By way of contrast, Dr. Bernstein's report describes him as "experienced in spinal surgery and related complications, including postoperative hemorrhage, hematoma, and cauda equina syndrome." But Dr. Bernstein did not opine in his report that any conduct by Drs. Hendricks or Houlton caused Jenco's injuries. Accordingly, we conclude that the district court did not abuse its discretion by dismissing the negligent-treatment claims against Drs. Hendricks and Houlton.

## II.

Appellants next challenge the district court's denial of their motion for a new trial. This court reviews the district court's denial of a motion for a new trial for abuse of discretion. *See Lake Superior Ctr. Auth. v. Hammel, Green & Abrahamson, Inc.*, 715 N.W.2d 458, 476-77 (Minn. App. 2006), *review denied* (Minn. Aug. 23, 2006). The

6

court "'will not set aside a jury verdict on an appeal from a district court's denial of a motion for a new trial unless it is manifestly and palpably contrary to the evidence viewed as a whole and in the light most favorable to the verdict.'" *Id.* at 477 (quoting *Navarre v. S. Washington Cnty. Schs.*, 652 N.W.2d 9, 21 (Minn. 2002)). The mere possibility that impaneling another jury and conducting a new trial that would bring about an opposite result is not grounds for a new trial. *See Heggstad v. Dubke*, 304 Minn. 129, 132, 229 N.W.2d 34, 36 (1975).

**A.**

Appellants first assert that they are entitled to a new trial because the district court excluded evidence regarding the bleeding risks associated with the drug Ketorolac, which was administered to Jenco during the first surgery. "The admission of evidence rests within the broad discretion of the [district] court and its ruling will not be disturbed unless it is based on an erroneous view of the law or constitutes an abuse of discretion." *Kroning v. State Farm Auto. Ins. Co.*, 567 N.W.2d 42, 45-46 (Minn. 1997) (quotation omitted). Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Minn. R. Evid. 401.

The district court reasoned that evidence regarding the bleeding risks associated with Ketorolac was not relevant because the district court had dismissed appellants' negligence theory based on the administration of Ketorolac before trial. The district court dismissed the theory because appellants' expert did not opine that the Ketorolac injection caused Jenco's cauda equina syndrome. Importantly, appellants do not challenge the

7

pretrial dismissal of this theory of liability. Moreover, as the district court noted, Dr. Bernstein testified at trial that he had no criticisms of the medical treatment of Jenco until after the second surgery. Because there was no claim at trial that the Ketorolac injection caused Jenco's injuries, facts regarding the Ketorolac injection were not "of consequence to the determination of the of the action." Minn. R. Evid. 401. Accordingly, the district court did not abuse its discretion by denying appellants' motion for a new trial on this ground.

## B.

Appellants assert that they are entitled to a new trial or a *Schwartz* hearing because of alleged juror misconduct. The district court has discretion to grant a new trial based on juror misconduct. *See* Minn. R. Civ. P. 59.01(b). The court may also hold a *Schwartz* hearing, during which a juror or jurors may be questioned to determine the existence of misconduct. *See Schwartz v. Minneapolis Suburban Bus Co.*, 258 Minn. 325, 328, 104 N.W.2d 301, 303 (1960). This court reviews both the denial of a *Schwartz* hearing and the denial of a new trial based on juror misconduct for abuse of discretion. *Opsahl v. State*, 677 N.W.2d 414, 421 (Minn. 2004); *Benson v. Rostad*, 384 N.W.2d 190, 196 (Minn. App. 1986).

Appellants assert juror misconduct by two jurors, one who posted a number of "tweets" (posts to the social-media website Twitter) during the trial reflecting his disdain for jury duty, but did not disclose any specifics about the case, and one who had been convicted of a felony, but did not volunteer that information during the voir dire process. The district court reasoned that the alleged juror conduct did not rise to the level of

8

misconduct and that appellants could not demonstrate any prejudice stemming from the alleged conduct. We agree. As the district court explained, the one juror's tweets "although disrespectful and distasteful, did not violate [the district court's jury] instructions." And the other juror was discharged from his felony convictions well before trial, was not disqualified from serving on a jury, and was not asked if he had any convictions during voir dire. *See* Minn. R. Gen. Pract. 808(b); *see also Olberg v. Minneapolis Gas Co.*, 291 Minn. 334, 342, 191 N.W.2d 418, 424 (1971) ("A trial court is not justified in ordering a new trial simply because a peremptory challenge might have been exercised had the attorney elicited certain information on the voir dire examination.") Moreover, appellants have done no more than speculate that the alleged misconduct compromised those jurors' abilities to be impartial. Under these circumstances, the district court did not abuse its discretion by denying appellants' motion for a new trial on this ground. *See State v. Kelley*, 517 N.W.2d 905, 910 (Minn. 1994) (holding that party moving for new trial on grounds of juror misconduct bears burden to show both misconduct and prejudice); Minn. R. Civ. P. 61 (providing that harmless error cannot be basis for granting new trial).

**Affirmed.**