# STATE OF MINNESOTA
# IN COURT OF APPEALS
# A15-1711

Scott Peterson,
Appellant,

Roger Smith,
Plaintiff,

vs.

City of Minneapolis, Minnesota,
Respondent.

**Filed May 2, 2016**
**Reversed and remanded**
**Ross, Judge**

Hennepin County District Court
File No. 27-CV-14-4488

Erik F. Hansen, Burns & Hansen, P.A., Minneapolis, Minnesota (for appellant)

Susan L. Segal, Minneapolis City Attorney, Andrea K. Naef, Assistant City Attorney, Darla J. Boggs, Assistant City Attorney, Minneapolis, Minnesota (for respondent)

Considered and decided by Reyes, Presiding Judge; Ross, Judge; and Smith, Tracy, Judge.

## S Y L L A B U S

A human resources complaint process may qualify as a "dispute resolution process" under Minnesota Statutes section 363A.28, subdivision 3 (2014) and toll the running of the Minnesota Human Rights Act's one-year statute of limitations.

# OPINION

**ROSS**, Judge

The Minneapolis Police Department transferred 54-year-old, 24-year veteran police officer Scott Peterson from the department's violent offender task force to the department's licensing unit. Peterson filed an age-discrimination complaint with the Minneapolis Department of Human Resources, and a year later the city determined that the transfer was not motivated by Peterson's age. Peterson sued the city claiming age discrimination under the Minnesota Human Rights Act. But the district court held Peterson's claim to be time-barred under the act's one-year statute of limitations. We reverse the summary judgment order and remand for further proceedings because we hold that the investigation triggered by Peterson's human resources complaint constitutes a deadline-tolling "dispute resolution process" under Minnesota Statutes section 363A.28.

## FACTS

Scott Peterson served as a Minneapolis police officer from 1987 to 2012. According to Peterson, he heard negative comments about his age during the last decade of his service. In October 2011, when Peterson was 54 years old, the police department transferred him out of the violent offender task force to the less prestigious licensing unit. Peterson says that a superior told him that the transfer was "for the betterment of the department." And he asserts that four other officers who also were older than age 40 were transferred out of the task force around the same time. One of those officers is Roger Smith.

Peterson and Smith filed complaints with the city's department of human resources in November 2011, alleging that the police department transferred them because of their

2

age, violating the city's Respect in the Workplace Policy. That policy prohibits age discrimination, among other things. It encourages employees to report possible discrimination to their supervisors or to the human resources department. According to the city, although the policy states that workplace discrimination may also constitute a violation of the Minnesota Human Rights Act (MHRA), the department does not investigate complaints for the purpose of determining whether there has been a violation of the act but to determine only whether there has been a violation of the city's workplace-respect policy.

The human resources department investigated Peterson's and Smith's complaints and in January 2013 concluded that Peterson's transfer was not based on his age. The record does not show why it took the department so long to complete the investigation. Both officers then filed discrimination complaints with the Minnesota Department of Human Rights. They eventually withdrew these complaints and filed a lawsuit against the city in March 2014, alleging, among other things, that their transfers constituted age discrimination in violation of the MHRA. The city moved for partial summary judgment. The district court granted summary judgment on Peterson's MHRA claim after holding the claim to be untimely under the act's one-year statute of limitations. The lawsuit proceeded solely on Smith's remaining claims, which the district court dismissed in July 2015.

Peterson (but not Smith) appealed. This court dismissed the appeal because a final judgment had not yet been entered. The district court entered a final judgment in September 2015, and Peterson has renewed his appeal.

**ISSUE**

Did Peterson's filing a human resources age-discrimination complaint with the city render the parties to be "voluntarily engaged in a dispute resolution process involving a claim of unlawful discrimination" under Minnesota Statutes section 363A.28, subdivision 3, so as to toll the running of the statute of limitations on Peterson's right to sue under the Minnesota Human Rights Act?

**ANALYSIS**

Peterson asks us to reverse the district court's summary judgment decision. We review summary judgment decisions based on evidence construed in the light most favorable to the nonmoving party, and we determine whether a disputed issue of material fact or a district court legal error prevents judgment as a matter of law. *McIntosh Cty. Bank v. Dorsey & Whitney, LLP*, 745 N.W.2d 538, 544–45 (Minn. 2008). The facts that bear on the district court's legal holding are not in substantial dispute for the purposes of the summary judgment decision, which rests mostly on the district court's interpretation of the tolling provision in the MHRA's statute of limitations. We review the application of statutes of limitation de novo. *State Farm Fire & Cas. v. Aquila Inc.*, 718 N.W.2d 879, 883 (Minn. 2006).

The MHRA includes a one-year limitation period for the filing of discrimination suits. Minn. Stat. § 363A.28, subd. 3. Peterson's appeal focuses us on a qualifying phrase in the statute's tolling provision. The tolling provision in relevant part states as follows:

> The running of the one-year limitation period is suspended
> during the time *a potential charging party and respondent are*
> *voluntarily engaged in a dispute resolution process involving*

4

> *a claim of unlawful discrimination under this chapter*, including arbitration, conciliation, mediation or grievance procedures pursuant to a collective bargaining agreement or statutory, charter, ordinance provisions for a civil service or other employment system or a school board sexual harassment or sexual violence policy.

*Id*. (emphasis added). Peterson argues that his human resources complaint tolled the statute of limitations because it rendered the parties to be voluntarily engaged in a dispute resolution process involving a claim of unlawful discrimination under the act. The city urges us to reject the argument.

The primary point of disagreement is the term "dispute resolution process." The statute does not define the term. *See* Minn. Stat. § 363A.03 (2014). In the only case we have found interpreting the term, a federal district court determined that the language necessarily implies the presence of a third-party intermediary. *Wussow v. Andor Tech.*, No. 12-614, 2012 WL 5199528, at *4 (D. Minn. Oct. 22, 2012). The district court here came to a different conclusion, holding that a third-party neutral might not be necessary, but that the process must at least provide a "formal forum" to resolve disputes, and it must have as its primary purpose the resolution of an unlawful discrimination claim under the MHRA. The district court held that the complaint process under the city's policy fails to meet all of those elements. For the following reasons, we agree with Peterson that the district court interpreted the term too narrowly.

We first consider what effect, if any, the phrase "including arbitration, conciliation, mediation or grievance procedures" might have on the meaning of "dispute resolution process." Either of two canons of construction arguably applies. The first of these is the

5

canon, *expressio unius est exclusio alterius*, which informs us that the inclusion of some items in a statute may imply the exclusion of all unlisted items. *State v. Caldwell*, 803 N.W.2d 373, 383 (Minn. 2011). If we apply it here, this canon could suggest that by specifically listing the dispute resolution processes of "arbitration, conciliation, mediation or grievance procedures," the legislature intended to restrict the types of limitations-tolling procedures to these or at least to procedures exactly like them. But we will not apply that canon here because of the introductory word, "including," which by definition is not exclusive. It is true that the legislature could have been more descriptive to establish certainly that it intended the list to be inclusive rather than exclusive or defining. For instance, it could have instead used the preface "including, but not limited to," or "such as," or "for example," as it has in various other statutes.

But we believe the language is clear enough to demonstrate inclusion. A more appropriate canon—one that simply follows the meaning of the word "including"—applies here. Caselaw advises that the word "includes" or "including" should be read as inclusive, not exclusive. It is a term of enlargement, not restriction. *See, e.g.*, *LaMont v. Indep. Sch. Dist. No. 728*, 814 N.W.2d 14, 19 (Minn. 2012) ("The use of the word 'includes' does not narrow claims of discrimination based on sex to claims of sexual harassment. The word 'includes' is not exhaustive or exclusive."). This plain-language approach finds ample support in the secondary sources as well. *See, e.g.*, 2A Norman J. Singer & Shambie Singer, *Sutherland Statutory Construction* § 47.25, at 444 (7th ed. 2014) ("The word 'include' in a statute generally signals that entities not specifically enumerated are not excluded."); *see also Garner's Dictionary of Legal Usage* 439 (3d ed. 2011) (cautioning that "including"

"should not be used to introduce an exhaustive list, for it implies that the list is only partial"). For these reasons, we hold that the statutory list of "arbitration, conciliation, mediation or grievance procedures" represents some but not necessarily all of the dispute resolution procedures that toll the statute of limitations. The statutory list does not therefore imply that the city's unlisted respect-in-the-workplace complaint process is excluded as a tolling dispute resolution process.

Understanding that the statute's list of dispute resolution procedures is not exhaustive, we turn to the term "voluntarily" to consider whether a process that is initiated unilaterally by one party can constitute a process that both parties are "*voluntarily* engaged in." We are satisfied that the answer is yes. It is true that some forms of dispute resolution, like arbitration and mediation, might indeed be characterized as voluntary at every stage because the parties generally enter those processes on their express agreement to resolve their specific dispute. But other dispute resolution procedures, like, for example, one of those listed in the statute ("grievance procedures pursuant to a collective bargaining agreement"), are "voluntary" only because the agreements that establish the procedure are voluntarily entered into by the entity that employs the complainant and the entity that represents the complainant. These agreements generally preexist the specific disputes to which they later apply. Under these agreements, an employee's labor union customarily can initiate a grievance procedure unilaterally on the employee's behalf regardless of the employer's willingness to engage in the procedure. But the tolling statute nevertheless considers these grievance procedures to be voluntary. The city's respect-in-the-workplace complaint process, like a collective bargaining agreement, exists as a component of the

7

voluntary employment relationship between the parties. We conclude that the policy complaint process is therefore not excluded from the tolling statute merely by virtue of its unilateral, case-specific initiation.

That the statute includes the labor grievance process similarly answers the city's related argument that, unless a third-party neutral moderates the procedure, the procedure is not a "dispute resolution process" under the statute. Although a labor grievance process might eventually involve a third-party neutral, its early stages customarily do not. The city's collective bargaining agreement with Peterson's union, for example, has a grievance process that does not necessarily involve a third-party-neutral decisionmaker. An arbitrator becomes involved only if the dispute is not resolved in one of the first two steps of the grievance process, neither of which involves a neutral. The first step is a discussion between the employee or his union representative and the employee's supervisor or some other ranking officer authorized to resolve the grievance. The second step, if necessary, is a meeting between the police chief and the union president. Because a grievance procedure is a "dispute resolution process" under the statute, and grievance procedures might not involve a third-party neutral, the city's policy complaint process is not excluded as a tolling procedure simply because it involves no third-party-neutral facilitator or decisionmaker.

This takes us to the city's contention that, unlike its policy complaint process, a "dispute resolution process" must be a process capable of resolving the dispute. Here somewhat of a fact dispute develops. The district court concluded that unrebutted evidence established that the purpose of the respect-in-the-workplace complaint process was to determine whether an accused employee has violated the city's policy, not to resolve claims

8

of unlawful discrimination under the MHRA. Peterson maintains that the complaint process might have resolved the dispute through mediation, and he supports the assertion by producing an affidavit swearing that a human resources employee informed him that the city's investigative process would have led to mediation if the investigation found that his transfer constituted a policy violation. Even if we disregard Peterson's assertion that mediation would have followed the city's policy investigation, we are satisfied from the city's policy that its complaint process could lead to "resolution" of the alleged unlawful discrimination under the MHRA.

The city's policy does not expressly declare all possible outcomes of a policy investigation, but it does imply that an investigation could lead to resolving an employee's complaint about age discrimination. For instance, the policy informs offended employees that the city will investigate a complaint "even *if* the complainant does not want . . . any action taken." The policy here implies that the investigation may indeed result in the city taking "action" to remedy (i.e., resolve) the reported discrimination. Similarly, the policy requires a supervisor who receives a policy complaint to "take prompt action to address the complaint." Accepting all reasonable inferences that favor the nonmoving party, we infer that this "action" by the human resources department or the complainant's supervisor could "resolve" the complaint so as to end the reported policy-violating and statute-violating discrimination. In other words, it could include the type of relief that mirrors the injunctive relief an MHRA suit could produce. *See* Minn. Stat. §§ 363A.33, subd. 6; 363A.29 subds. 3, 5(1) (2014) (authorizing the district court to order equitable relief under the MHRA, including ordering the employer to cease the discriminatory conduct and to reinstate or

promote the employee, among other things). The policy also declares that supervisors "shall be subject to a higher level of discipline" when they violate the policy. Violator "discipline," which we understand may include discharge or demotion, likewise might resolve the reported discrimination.

In sum, we disagree with the district court's reading of the city's policy. The text informs us that age discrimination under the policy is also age discrimination under the MHRA. And it strongly implies that an age-discrimination complaint to the human resources department could result in the kind of resolution that the city argues is necessary for the process to constitute a "dispute resolution process" under the deadline-tolling statute.

The city relatedly argues that the policy complaint process does not qualify because the policy's primary purpose is to eliminate harassment and discrimination in the workplace and not to determine whether any federal or state law has been violated. It maintains that this makes the process akin to a mere internal "auditing" process. But the tolling provision is triggered by a "dispute resolution process *involving* a claim of unlawful discrimination under [the MHRA]," not a dispute resolution process resolving an actual MHRA claim. Minn. Stat. § 363A.28, subd. 3 (emphasis added). The reported violation of the city policy prohibiting age discrimination *involves* a claim of unlawful discrimination under the MHRA. Whether the policy is primarily directed toward resolving MHRA claims or toward resolving policy violations that only implicitly constitute MHRA violations, a claim of age discrimination "involves" a claim concerning conduct that violates the MHRA.

10

The city contends finally that Peterson was never "engaged in" any process with the city because the workplace policy does not provide for complainants to "take . . . part in the investigation." The argument again relies on too narrow a reading of the statutory language. Because the statute expressly includes labor grievance procedures as qualifying dispute resolution processes, we look again to the city's own collective bargaining agreement with its police union to dispose of the city's argument. Under that agreement, the grievant himself need not participate in the process, because the agreement allows the union to interact in the process instead of the employee. We have no reason to suppose that the legislature intended to include only those agreements that require the employee to be directly involved in the grievance process. And as a matter of undisputed fact, the record demonstrates that Peterson was involved in the complaint process. Peterson himself initiated the process by making his human resources complaint, and we infer that complainant interviews are an integral part of the complaint-investigation process.

Summarizing, the statute does not exclude the city's human resources complaint process as a "dispute resolution process." Because the city's process has the same essential elements as the procedures the legislature expressly included as tolling processes, we believe the district court too narrowly construed the statute.

Although the statute is clear and our plain-language interpretation does not depend on MHRA policy considerations, those considerations would support our holding. The legislature asks that we interpret the MHRA liberally to accomplish its purposes. Minn. Stat. § 363A.04 (2014). The statute's tolling provision with its multiple dispute resolution examples, evinces the legislature's intent to encourage claimants to vet their discrimination

claims in nonjudicial forums without forfeiting their option to file an MHRA lawsuit. Congress similarly encouraged Title VII claimants to attempt alternative dispute resolution. *See* Civil Rights Act of 1991, Pub. L. No. 102–166, § 118, 105 Stat. 1071, 1081 (1991) ("Where appropriate . . . , the use of alternative means of dispute resolution, including . . . conciliation, . . . mediation, . . . and arbitration, is encouraged to resolve disputes arising under [Title VII]."). Interpreting the MHRA's tolling provision to hold that the city's human resources investigation of Peterson's age-discrimination complaint is a "dispute resolution process" meets both the letter and spirit of the act.

We reverse the summary judgment decision dismissing Peterson's claim as untimely.

## D E C I S I O N

Because the parties became voluntarily engaged in a dispute resolution process after Peterson filed his human resources complaint, we hold that Peterson triggered the statute of limitations tolling provision, and we remand for further proceedings.

**Reversed and remanded.**